IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WOLVERINE BARCODE IP LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>ALBERTSONS COMPANIES, INC.,<br><br>*Defendant.* | Civil Action No. 3:25-CV-01448-B<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. RELEVANT FACTUAL BACKGROUND AND INTRODUCTION ........................... 1

II. LEGAL STANDARD ................................................................................................. 1

    A. Federal Rule of Civil Procedure 12(b)(6) ................................................................ 1

    B. Standard for Patentable Subject Matter .................................................................. 2

III. THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER ..................................................................................................................... 3

IV. THERE ARE INVENTIVE ASPECTS OF THE '689 PATENT THAT PRECLUDE DISMISSAL AT THIS STAGE ................................................................................... 7

    A. Factual Allegations in the Complaint and Patent Specification Preclude Summary Judgment .................................................................................................................. 7

    B. The Claims of the '689 Patent Overcome a Specific Problem in E-commerce ........... 8

V. The Complaint Alleges that Defendant Infringes the '689 Patent ............................... 10

VI. LEAVE TO AMEND ................................................................................................. 10

VII. CONCLUSION AND PRAYER ................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ................. 7, 8

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ............................. 2

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014) ..................... 2, 3, 4, 7

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015) .................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 2, 10

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ......... 3

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ............................................................. 3, 7, 8

*BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ............................................... 7

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .................................. 5, 7, 8

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ............................................ 1

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ...................... 2

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ...................................... 10

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018) ..................... 10

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ...................................................... 6

*Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059 (D. Nev. 2018) ............................... 4

*Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177 (5th Cir. 2007) ........................................................ 8

*Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ............................... 2

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045 (5th Cir. 1982) ................ 1

*Kontrick v. Ryan*, 540 U.S. 443 (2004) ........................................................................................... 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012) ........ 2, 3

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ........................... 2, 3

*Messaging Gateway Sols., LLC v. Amdocs, Inc.* Civil Action No., 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015) ............................................................................ 9

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ..................................................................... 7

*Panasonic Corp. v. Magna Int'l., Inc.*, 6:21-cv-00319-ADA, 2022 WL 174513 (W.D. Tex. Jan 20, 2022) ................................................................................................................................. 2

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016) .................................. 2

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ................................................ 5, 7

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607
    (Fed. Cir. 2016).................................................................................................................... 5

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019)........................................ 4, 7

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6).......................................................................................................... . 1, 7

Plaintiff WOLVERINE BARCODE IP LLC, files this Response to Defendant's Motion to Dismiss[1] showing the Court that Defendant's Motion should be denied.

## I. RELEVANT FACTUAL BACKGROUND AND INTRODUCTION

On March 8, 2016, U.S. Patent No. 9,280,689 ("the '689 patent) entitled "Method and Apparatus for Doing Offline Commerce Transactions" was duly and legally issued by the U.S. Patent and Trademark Office. The '689 patent relates to novel and improved methods and apparatuses for conducting offline transactions that use a barcode as a method of personal identification.

Embodiments of the claimed invention provide numerous benefits over the prior art, including, but not limited to, allowing the user to charge purchasing of goods priced in micro payment level or non-micro payment level either offline or online at a participating vendor site.[2]

The patent specification provides that such indications were not possible prior to the claimed invention. Instead, the '689 patent provides fast checkout at the vendor cashier without the need to sign the sales receipt or enter a PIN thus providing convenience to the user and reducing the vendor operation cost. Further, the '689 patent enables the user to set spending thresholds either per purchase, per day, per week or per month.[3]

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to

---

[1] Doc. No. 24.
[2] Doc. No. 1-2, the '689 patent at Column 2, lines 35-38 ("2:35-38").
[3] *See id* at 4:3-9.

1

evaluate the plaintiff's likelihood of success." *Panasonic Corp. v. Magna Int'l., Inc.*, 6:21-cv-00319-ADA, 2022 WL 174513 (W.D. Tex. Jan 20, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

### B. Standard for Patentable Subject Matter

The Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."[4] At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts.[5] If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step."[6] If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "inventive concept *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."[7]

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."[8] However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."[9]

---

[4] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78, 132 S. Ct. 1289 (2012).
[5] *Id.* at 217.
[6] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).
[7] *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).
[8] *Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*DIRECTV*") ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").
[9] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the ineligible concept itself"[10] "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept."[11] Instead, the claim elements must involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."[12] "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."[13]

Applying these standards, the claims of the '689 patent are patent eligible.

### III. THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER

The Claims of the '689 patent are directed to improved systems of conducting electronic commerce.[14] The patent specification provides that such indications were not possible prior to the claimed invention. Instead, the '689 patent provides fast checkout at the vendor cashier without the need to sign the sales receipt or enter PIN thus provide convenience to the user and reduces the vendor operation cost. Further, the '689 patent enables the user to set spending thresholds either per purchase, per day, per week or per month.[15]

Further, there is no record evidence of the claimed solution existing prior to the invention of the claims of the '689 patent and thus there is no record evidence that the claimed improvement

---

[10] *McRO*, 837 F.3d at 1312.
[11] *Alice*, 573 U.S. at 222.
[12] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.
[13] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).
[14] Doc. No. 1-1 at 17: 30-34.
[15] *See id* at 4:3-9.

for e-commerce systems are conventional.

### A. The Claims of the '689 Patent Are Directed to Concrete Steps

To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[16] a court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[17]  In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[18]  Taking the claim as a whole, the focus of the claims is "Methods and apparatus for conducting offline commerce transactions that use a barcode as an alternative means for personal identification."[19] ("Focus").

This Focus is supported by the Abstract of the '689 patent:

> Methods and apparatus for conducting offline commerce transactions that use a barcode as an alternative means for personal identification. The user represented in the bar code format, User ID Barcode, is generated from a number that uniquely identifies the user. Numbers such as a cell phone number or a credit card number may be used to generate the User ID Barcode. These numbers are prefixed with a special character before they are converted to the barcode format. Prefixing a special character is necessary so that the bar code generated can be distinguished from any bar code representing products being sold. If a credit card number is used, the User ID Barcode is printed on the back of the credit card which then becomes a 2 and 1 credit card.

Assessing the focus of the claims from the Abstract is proper as the directed inquiry may also involve looking to the Abstract or patent specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.[20]

---

[16] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.
[17] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[18] *See e.g., Alice Corp.*, 574 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).
[19] Doc. No. 1-1, Abstract and Claims, *generally*.
[20] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) *citing TLI*

4

The specification of the '689 patent provides further support for the Focus in the Background of Invention and Summary:

> *Users currently pay for goods priced in micro payment levels, such as five cents or ten cents using cash. Such payments are not made with credit cards because the cost of the credit card transaction processing is too high, making it impractical both for vendors and credit card companies to accept the use of a credit card for micro payment purchases.*[21]
>
> *The present invention introduces a new method for identifying a user using the User ID Barcode, allowing the user to charge purchasing of goods priced in micro payment level or non-micro payment level either offline or online at a participating vendor site.*[22]

A problem overcome by the invention is specific to e-commerce, namely allowing the user to charge purchasing of goods priced in micro payment level or non-micro payment level either offline or online at a participating vendor site.[23]

The '689 patent specification provides substantial detail for the claimed invention and its interrelatedness with each claimed element for sufficient specificity to be concrete.[24]  For instance, the '689 patent provides reference to systems and methods through the detailed flowcharts that can be used to perform the e-commerce solutions of the claimed inventions.[25] FIG. 1(*b*) is an overview of the purchasing transaction of the method and apparatus of the present invention using the User ID Barcode, downloaded into a cell phone or printed on the back of a credit card; FIG. 2(*b*) describes

---

*Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) (in the step one analysis, pointing to statements from the specification that supported the identified focus was the key discovery described in the patent).
[21] Doc. No. 1-1 at 1:25-31.
[22] *Id. at* 2:34-38.
[23] *See id.*
[24] *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).
[25] *See* Doc. No. 1-1 at 4:62-5:27.

the transaction processing of the present invention using the User ID Barcode; FIG. 3 is an overview of the net worked environment in which the present technology is used; FIG. 4(*b*) is a diagram of the technology executing on a server built in accordance with the principles of the present invention; FIGS. 5(*a*) and **5**(*b*) describe the user registration process at the UVM; FIG. 6(*a*) shows the user UVM account balance after each purchasing transaction in a pre-paid mode; FIG. 6(*b*) shows the user UVM account balance after each purchasing transaction in a post pay mode; FIG. 7(*a*) shows the purchasing process; FIG. 7(*b*) shows the purchasing process in a pre-paid mode; FIG. 7(*c*) shows the purchasing process in a post pay mode; FIG. 8 describes the purchasing logics when a user registered at a UVM makes purchases at a vendor of another UVM; and FIG. 9 is an example of the logic when a user makes purchases at a vendor of a different currency for international commerce transactions.[26] In short, there is ample detailed disclosure of how to implement embodiments of the claimed invention.

### B. Defendant Oversimplifies the Claimed Invention and Ignores Important Limitations.

Defendant's Motion is an oversimplification and focuses on claim elements rather than the claims as a whole. Defendant "describe[s] the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."[27] For instance, Defendant's Motion over generalizes the teachings of the patent by arguing that the '689 patent is directed to "nothing more than verifying a customer's ability to pay."[28] Such an oversimplification can best be categorized as 'a search for a level of abstraction to guarantee invalidity.' There is much more to the claimed invention.

Moreover, this is not a case where a computer is an added element to automate what was done

---

[26] *See id.* at 9:19-16:65.
[27] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).
[28] *See* Defendant's Motion at 6.

manually before, rather Plaintiff's claimed invention is directed at a solution to a problem unique to e-commerce, as set forth in the specification.[29]

## IV. THERE ARE INVENTIVE ASPECTS OF THE '689 PATENT THAT PRECLUDE DISMISSAL AT THIS STAGE

To evaluate whether asserted claims satisfy *Alice*'s second step of "search[ing] for an 'inventive concept,'"[30] a court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."[31] While a court may determine patent eligibility at the Rule 12(b)(6) stage, it is "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."[32] "Plausible factual allegations may preclude dismissing a case under § 101."[33] All facts pertinent to the eligibility question must be proven by clear and convincing evidence.[34] Here, Plaintiff makes numerous factual allegations in the patent specification that are not rebutted by Defendant.

### A. Factual Allegations in the Complaint and Patent Specification Preclude Summary Judgment.

Even if this Court determines Plaintiff's claims are directed towards an abstract idea, patent eligibility is possible if the abstract idea include[s] 'additional features' to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."[35] "These additional features cannot simply be well-understood, routine, conventional activities previously known to the

---

[29] *See e.g.*, Doc. No. 1-1, 4:46-55.
[30] *Alice*, 573 U.S. at 217, 134 S.Ct. 2347.
[31] *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289 (Fed. Cir. 2018)
[32] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).
[33] *Id.*
[34] *HP Inc.*, 881 F.3d at 1368 citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).
[35] *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quotations and alterations omitted); *see also Trading Techs.*, 921 F.3d at 1093 ("Step two 'looks more precisely at what the claim elements add' to determine if 'they identify an inventive concept in the application of the ineligible matter to which...the claim is directed." (quoting *SAP*, 898 F.3d at 1167).

industry."[36] Here, primary improvement over the prior art mentioned in the patent specification is a claimed improvement, the provision of enabling "the user to automatically register with the UVM without requiring the user to enter details of personal information, upon the user's first use of the User ID Barcode for purchasing goods."[37]

As such, there are factual allegations of an improvement over the prior art, which must be taken as true at this stage of the litigation,[38] namely: security for the user's personal sensitive information is improved.[39]

The '689 patent's specification teaches the claimed solution provided for e-commerce systems was not available prior to the invention of the claims of the '689 patent. Thus, taking all inferences in Plaintiff's favor,[40] dismissal at this stage would be inappropriate.[41]

### B. The Claims of the '689 Patent Overcome a Specific Problem in E-commerce

The Claims of the '689 patent provide a solution to a specific problem arising in electronic commerce, namely allowing a user to conduct secure electronic commerce over the Internet using micropayments.[42] The patent specification provides that such transactions were not possible prior to the claimed invention.[43] Thus, the claimed improvements cannot be said to be conventional when viewing the claim as a whole.

Stated another way, the claims of the '689 patent are further patentable for similar reasons to

---

[36] *ChargePoint*, 920 F.3d at 773 (quotation and alteration omitted); *see HP Inc.*, 881 F.3d at 1367 ("The second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." (quotation and alteration omitted)
[37] *See* Doc. No. 1-1 at 4:29-33, Abstract and Claims, *generally*.
[38] *Aatrix Software, Inc.*, 882 F.3d at 1125; *Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177, 180 (5th Cir. 2007).
[39] Doc. No. 1-1 at 5:66-67.
[40] *Guidry*, 512 F.3d at 180.
[41] *Aatrix Software, Inc.*, 882 F.3d AT 1125; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).
[42] *See* Doc. No. 1-1 at 19:43-44.
[43] *See id.* at 3:40-67.

8

those in *Messaging Gateway Sols., LLC v. Amdocs, Inc.*[44] wherein the court found the claims "directed to a problem unique to text-message telecommunication between a mobile device and a computer. The solution [ ] it provides is tethered to the technology that created the problem."[45] Similarly, the '689 claims are directed to a problem unique to electronic commerce. The '689 claims enable secure electronic commerce where security would otherwise be unavailable and the '689 claims thus patent eligible.[46]

As in *Messaging Gateway Solutions*, the claims here are directed as a whole to a "specific problem arising in the realm of "electronic commerce." Traditionally users were required to furnish sensitive information to conduct transactions as described in the Background of the '689 patent, just like how in *Messaging*, traditionally "phones could not send SMS text messages to computers."[47] The '689 protects the user's privacy "when the user makes purchases of goods either offline or online using the User ID Barcode without the need to provide each vendor the user's personal information."[48] Thus, here the claimed invention "overrides conventional practice."[49] Here, the specification provides concrete examples of how to practice the claims tethering the solution "to the technology that created the problem." For the same reason, the claims of the '689 Patent avoid the disqualifying problem identified in *Alice*, which was preempting the abstract idea of mediated electronic transactions.[50]

The preset claims therefore, when "taken together as an ordered combination ... recite an

---

[44] Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015).
[45] *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *15-16 (D. Del. Apr. 15, 2015)(emphasis added).
[46] *See id*.
[47] *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *16 (D. Del. Apr. 15, 2015).
[48] See Doc. 1-1, 4:25-28.
[49] *Id.*
[50] It is important to note that Plaintiff does not admit its claims are abstract and only provides this argument should the Court find the claims as such.

9

invention that is not merely [a] routine or conventional" method of conducting electronic commerce over the Internet using micropayments. The claims of the '689 patent do not try to pre-empt every use of electronic commerce, but rather recite a specific way to facilitate secure transactions in a specific setting, keeping the claims patent eligible.[51]

### V. The Complaint Alleges that Defendant Infringes the '689 Patent

All features in the asserted claims of the '689 patent are addressed by the claim charts sufficiently to put Defendant on notice of how Defendant infringes. Plaintiff has plausibly shown that every feature of the asserted claims is infringed. The "plausibility standard is met when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff has met this threshold.

Defendant asserts that Defendant's customers perform some aspects of asserted claim 1. However, careful consideration of Plaintiff's Exhibit B[52] demonstrates that it is Defendant who controls all aspects of its infringing process, including things such as scanning a customer's bar code and providing customers with applications configured by Defendant, all for Defendant's benefit. Defendant's Motion should be denied.

### VI. LEAVE TO AMEND

Plaintiff respectfully requests leave to amend if the Court is inclined to grant Defendant's Motion to Dismiss. Plaintiff believes that it has addressed each of Defendant's points but respectfully requests leave to amend if the Court disagrees, to have the opportunity to file an amended complaint

---

[51] *See, e.g., DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).
[52] Doc. 1-2.

to correct any identified pleading issues.

Plaintiff's request for leave is brought at an extremely early junction in this proceeding. Given the liberal policy of granting leave to amend,[53] Plaintiff should be permitted to seek leave to do so, to file an amended complaint to address any Court-identified deficiencies.

### VII.    CONCLUSION AND PRAYER

Plaintiff respectfully requests and prays that the Court deny, in its entirety, Defendant's Motion to Dismiss.

> Respectfully submitted,
> **Ramey LLP**
>
> /s/ William P. Ramey, III
>
> William P. Ramey, III
> Texas State Bar No. 24027643
> 446 Heights Blvd., Suite 200
> Houston, Texas 77007
> (713) 426-3923 (telephone)
> wramey@rameyfirm.com
>
> ***WOLVERINE BARCODE IP LLC***

---

[53] "[L]eave [to amend] shall be freely given when justice so requires." *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004).

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of January 9, 2026, with a copy of the foregoing via CM/ECF filing.

/s/ William P. Ramey, III
William P. Ramey, III
