**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| WOLVERINE BARCODE IP LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALBERTSONS COMPANIES, INC.,<br><br>　　　　　Defendant. | Civil Action No. 3:25-CV-01448-B |

**REPLY IN SUPPORT OF DEFENDANT ALBERTSONS
COMPANIES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.       The '689 Patent Claims Patent-Ineligible Subject Matter Under 35 U.S.C. § 101 . . . . . . .1

          A.    *Alice* Step One: The '689 Patent Claims are Directed to an Abstract Idea . . . . . . 2

                1.    Plaintiff Confirms the Focus of the Claims is an Abstract Idea . . . . . . . . . 3

                2.    Claiming a Connection to "E-Commerce" Does Not Save the Claims . . . 4

          B.    *Alice* Step Two: The Claims Do Not Recite Any Inventive Concept . . . . . . . . . . .5

          C.    The Court Can and Should Resolve Patent Eligibility at the Pleading Stage . . . . . 6

II.      The Complaint Admits That Albertsons Does Not Infringe the Patent . . . . . . . . . . . . . . . 7

III.     The Response Concedes That the Complaint Fails to Allege Indirect Infringement . . . . . 9

IV.    The Court Should Deny Leave to Amend the Complaint . . . . . . . . . . . . . . . . . . . . . . . . .9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## **TABLE OF AUTHORITIES**

*Cases*                                                                                                     *Page*

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ...........................................3, 4, 6

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ..................................................8, 9

*Alice Corp. Pty v. CLS Bank Int'l*,
   573 U.S. 208 (2014) .................................................................. 4-6

*Ariosa Diagnostics, Inc. v. Squenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015) ........................................................3

*Arkansas v. Wilmington Trust Nat'l Ass'n*,
   No. 18-1481, 2020 WL 1249570 (N.D. Tex. Mar. 16, 2020) ........................ 8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ........................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................7

*Black v. N. Panola Sch. Dist.*,
   461 F.3d 584 (5th Cir. 2006) ............................................................8

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ..........................................................9

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ........................................................4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ...................................................... 3-5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ....................................................2, 4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ........................................................2

*David Austin Roses Ltd. v. GCM Ranch LLC*,
   764 F. Supp. 3d 474 (N.D. Tex. 2025) ...............................................7

# TABLE OF AUTHORITIES
*(continued)*

*Cases*      *Page*

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
 888 F. 3d 1256 (Fed. Cir. 2018) ................................................... 7

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016) ....................................................6

*Enfish, LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016) ....................................................3

*Finch v. Davis*,
 No. 17-209, 2018 WL 10582158 (N.D. Tex. Mar. 6, 2018) ...........................9

*Fischer v. Fischer*,
 No. 20-2173, 2021 WL 1720213 (N.D. Tex. Apr. 30, 2021) ...................... 9, 10

*Goldstein v. MCI WorldCom*,
 340 F.3d 238 (5th Cir. 2003) .....................................................10

*McKinney v. Irving Indep. Sch. Dist.*,
 309 F.3d 308 (5th Cir. 2002) .....................................................10

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
 No. 14-732, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ......................... 5, 6

*Mobile Acuity Ltd. v. Blippar Ltd.*,
 110 F.4th 1280 (Fed. Cir. 2024) .................................................. 9

*PerformancePartners LLC v. NextGen Parking, LLC*,
 No. 23-564, 2024 WL 1317800 (N.D. Tex. Mar. 26, 2024) ..........................6

*RecogniCorp, LLC v. Nintendo Co.*,
 855 F.3d 1322 (Fed. Cir. 2017) ...................................................5

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
 65 F. 4th 698 (Fed. Cir. 2023) ...................................................9

*Synops, Inc. v. Mentor Graphics Corp*,
 839 F.3d 1138 (Fed. Cir. 2016) ................................................2, 3

*Thomas v. Chevron U.S.A., Inc.*,
 832 F.3d 586 (5th Cir. 2016) ....................................................10

*In re TLI Commc'ns LLC Pat. Litig.*,
 823 F.3d 607 (Fed. Cir. 2016) ....................................................5

# TABLE OF AUTHORITIES
*(continued)*

*Cases* *Page*

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019) ...................................................5

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   587 F.3d 1339 (Fed. Cir. 2009) ...................................................9

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ....................................................4

*US Pat. No. 7,679,637, LLC v. Google LLC*,
   No. 24-1520, 2026 WL 174922 (Fed. Cir. Jan. 22, 2026) .............................5

*U.S. S.E.C. v. ConnectAJet.com, Inc.*,
   No. 09-1742, 2010 WL 2484280 (N.D. Tex. June 17, 2020) ..........................7

*Statutes*

35 U.S.C. § 101 ..............................................................1, 3, 5, 6

*Rules*

Fed. R. Civ. P. 12(b)(6) ..........................................................6

Fed. R. Civ. P. 15(a)(2) ..........................................................9

**INTRODUCTION**

Wolverine Barcode's opposition confirms that the Court should grant Albertsons' motion to dismiss. In response to Albertsons' motion explaining that the '689 patent claims ineligible subject matter, plaintiff provides only vague, conclusory descriptions of its patent and what it allegedly requires, thus supporting Albertsons' view that the patent claims only an abstract business concept dressed in functional language. Just as in *Alice* itself, plaintiff cannot save the claims by mentioning that they address "e-commerce." In addition and independently, plaintiff's opposition fails to address another fatal flaw in its allegations that Albertsons identified in its motion: according to plaintiff's own claim charts filed with its complaint, the asserted method claims are not performed by or attributable to a single entity, and thus plaintiff cannot claim infringement. Plaintiff provides less than a page in response on this point, with no relevant citation, and for good reason: it has no reasonable arguments against Albertsons' motion. Finally, plaintiff tepidly asks for leave to amend, but it cannot amend to assert a patent with ineligible subject matter, and it fails to provide any specificity about any proposed amendment. The Court should therefore dismiss Wolverine Barcode's complaint without leave to amend.

**ARGUMENT**

**I.     The '689 Patent Claims Patent-Ineligible Subject Matter Under 35 U.S.C. § 101**

The '689 patent claims fail both steps of the *Alice* analysis: they claim the patent-ineligible idea of verifying a customer's ability to pay, which merchants have done for thousands of years, performed by generalized computer components performing routine, conventional functions. Mot. § I. Plaintiff does not engage with Albertsons' arguments, instead repeating that the "claimed invention is directed at a solution to a problem unique to e-commerce" without identifying the solution, or the problem, or why it is "unique to e-commerce." Opp. at 6-7.

A.     *Alice* **Step One:  The '689 Patent Claims are Directed to an Abstract Idea**

The '689 patent claims only the abstract idea of checking whether a customer can pay for a transaction.  Mot. § I.A.  The claims and specification show that the "focus of the claimed advance over the prior art" is "identifying a user" before "allowing the user to charge purchasing of goods."  *Id.*  Plaintiff's opposition confirms that the claims focus not on any technical improvement, but instead on business principles.  Plaintiff argues that the '689 patent provides "fast checkout," providing "convenience to the user" and "reduc[ing] the vendor operation cost."  Opp. at 3.  But even if the claims recited "fast checkout" (which they do not), each of these alleged improvements are financial *concepts*:  every business owner wants lower costs and customers who pay more quickly.  Plaintiff next argues that the patent "enables the user to set spending thresholds" (*id.*), citing the specification's promise to "allow" these settings.  *See* '698 patent at 1:35-36; 4:3-8.  But plaintiff fails to identify where in any claim this "enabling" occurs, because it does not:  the claims specify no process for spending thresholds, set by a user or otherwise.  *See id.* at 17:31 to 18:31.  The claims, taken as a whole, require scanning a barcode, checking a server to see whether the customer has enough money, and then telling the register whether or not the customer has enough money.  Mot. § I.A.[1]  Verifying a customer's ability to pay is a basic economic concept ineligible for patenting.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (claim for "verifying the validity of a credit card transaction over the Internet" was drawn to an unpatentable abstract idea).

---

[1] Plaintiff briefly argues that there is "no record evidence of the claimed solution existing prior to the invention," and thus that the "claimed improvement" is not conventional.  Opp. at 3-4.  Even if plaintiff had explained what "claimed improvement" would be novel (which it does not), it would miss the point:  "a claim for a *new* abstract idea is still an abstract idea."  *Synops, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original).

– 2 –

### 1.  Plaintiff Confirms the Focus of the Claims is an Abstract Idea

Albertsons explained that, taken in their entirety and in view of the specification, the claims provide the steps of scanning a user barcode (or any other identification including a 'unique number' or 'special character'), checking that identification against a database, and then telling the register whether the customer can pay for the transaction. Mot. § I.A. In response, Wolverine Barcode urges the Court to look *away* from the claims, citing only the specification and figures—without a single reference to the claims—to argue that their "focus" is "conducting offline commerce transactions that use a barcode as an alternative means for personal identification." Opp. at 4-6. But "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys*, 839 F.3d at 1149. "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). Plaintiff cites *Ariosa Diagnostics, Inc. v. Sequenom, Inc.* in a footnote, but *Ariosa* confirms that the Court must consider "the *claims* at issue[] as *informed* by the specification." 788 F.3d 1371, 1376 (Fed. Cir. 2015) (emphasis added). Once focused on the claims, the Court will see that their focus is ineligible. Mot. § I.A.

Plaintiff argues that Albertsons "oversimplifies the claimed invention" and "focuses on claim elements rather than the claims as a whole," concluding that "[t]here is much more to the claimed invention." Opp. at 6 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)). But unlike in *Enfish*, plaintiff does not identify what this "much more" is or where in the claims it can be found. *See* 822 F.3d at 1335. Plaintiff only repeats that the "specification teaches the claimed solution provided for e-commerce systems," without ever explaining what that is. Opp. at 8; *see id.* at 5-8. This cannot suffice. *See, e.g., Affinity Labs of Texas, LLC v.*

*DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (finding highly general claims ineligible because they failed to disclose the specific process by which they achieved an improvement).

Even if plaintiff could overlook the claims in favor of the specification, "methods and apparatus for conducting offline commerce transactions that use a barcode as an alternative means for personal identification" (Opp. at 4) is just a jargon-filled way of saying 'verifying a customer with a computer instead of your eyes.' Application of an abstract idea "to a particular technological environment" has "long been held insufficient to save" the abstract idea. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see Alice Corp. Pty v. CLS Bank Int'l*, 573 U.S. 208, 2359 (2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

### 2. Claiming a Connection to "E-Commerce" Does Not Save the Claims

Plaintiff next argues that the patent solves a problem "specific to e-commerce," which it identifies as "allowing the user to charge purchasing of goods priced in micro payment level or non-micro payment level either offline or online at a participating vendor site." Opp. at 5. Again, plaintiff cites only the specification, as the claims say nothing about "micro payments." *See* '698 patent at 17:31 to 18:31. Again, it does not matter: allowing a customer to make large or small purchases based on creditworthiness is not "specific to e-commerce" but a fundamental economic practice; even as spun by plaintiff, the claims are still "directed to the mere formation and manipulation of economic relations" that "involve an abstract idea." *Content*, 776 F.3d at 1347.

Even if the claims were limited to "e-commerce," that would not make them eligible. "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *ChargePoint*, 920 F.3d at 768 (alterations in original) (quoting *Alice*, 573 U.S. at 222). Limiting "verifying a customer's ability

to pay" to a "particular environment" does "not make the claims any less abstract for the step 1 analysis." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

### B.   *Alice* Step Two:  The Claims Do Not Recite Any Inventive Concept

Plaintiff does not engage with Albertsons' arguments regarding *Alice* step two, asserting instead that the patent's "additional features" render it patent-eligible.  Opp. at 7.  Plaintiff points to two such "features":  enabling "the user to automatically register with the UVM without requiring the user to enter details of personal information, upon the user's first use of the User ID Barcode for purchasing goods," and "security for the user's personal sensitive information."  Opp. at 8.  For both "features," plaintiff quotes from the specification, not the claims.  But "[t]o save a patent at step two, an inventive concept must be evident in the claims."  *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).[2]  The claims recite only results-focused limitations such as "providing a personal code" and "establishing a User Account," without explaining *how* to do so, in a manner novel or otherwise.  '698 patent at 17:31 to 18:31.  And the claims recite nothing about "security for the user's personal sensitive information."  Opp. at 8.  So plaintiff's asserted "features" cannot help it.  Claims that "do not explain *how*" they "achieve the recited" improvement fail *Alice* step two.  *US Pat. No. 7,679,637, LLC v. Google LLC*, No. 24-1520, 2026 WL 174922 at *3 (Fed. Cir. Jan. 22, 2026) (emphasis added).

Plaintiff relies heavily on *Messaging Gateway Solutions, LLC, v. Amdocs, Inc.*, No. 14-732, 2015 WL 1744343 (D. Del. Apr. 15, 2015).  *See* Opp. at 8-10.  But *Messaging*

---

[2] Plaintiff cites two cases for this point; both require dismissal here.  Opp. at 7 n.35.  *ChargePoint* held that "any reliance on the specification in the § 101 analysis must always yield to the claim language," 920 F.3d at 769, and found that an "'abstract-idea-based solution implemented with generic technical components in a conventional way'" cannot claim eligible subject matter.  *Id*. at 775 (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)).  Similarly, *Trading Techs. Int'l, Inc. v. IBG LLC* found that "well-understood, routine, conventional activity that does not add something significantly more to the abstract idea."  921 F.3d 1084, 1093 (Fed. Cir. 2019).  Neither case helps plaintiff here.

*Gateway* supports dismissal here. It found that the contested claim—not the specification—contained "*meaningful limitations* that prevent it from preempting the abstract idea of receiving, translating, and delivering a message." *Id*. at *5 (emphasis added). Here, in contrast, plaintiff identifies no "meaningful limitations" in the '689 patent; plaintiff says nothing about the claims at all. *See generally* Opp. *Messaging Gateway* confirms that a claim can survive *Alice* step two only where the claim itself "specifies *how*" the invention can "achieve a desired result which overrides conventional practice." 2015 WL 1744343, at *5 (emphasis added). Plaintiff does not identify any "how" in the purely results-driven claims of the '689 patent, and cannot do so because none exists. Indeed, the asserted claims use precisely the "essentially result-focused, functional" language found to be a "frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

### C. The Court Can and Should Resolve Patent Eligibility at the Pleading Stage

Although plaintiff concedes that "a court may determine patent eligibility at the Rule 12(b)(6) stage," it briefly argues that this Court cannot do so because it "makes numerous factual allegations in the patent specification that are not rebutted by Defendant." Opp. at 7. Plaintiff identifies no such "factual allegations," let alone any "in the patent specification" that Albertsons has not "rebutted." *Id.* Every patent has a specification, and plaintiff cannot use its existence to override case law confirming that "determining patent eligibility under § 101 is appropriate at the pleadings stage [because] '[i]ssues of patent-eligible subject matter are questions of law.'" *PerformancePartners LLC v. NextGen Parking, LLC*, No. 23-564, 2024 WL 1317800, at *3 (N.D. Tex. Mar. 26, 2024) (alterations in original) (quoting *Affinity Labs*, 109 F. Supp. 3d at 931).

– 6 –

## II.     The Complaint Admits That Albertsons Does Not Infringe the Patent

Assuming that the '689 patent claims eligible subject matter, the court should still dismiss this action because the complaint admits that Albertsons does not infringe the patent. Wolverine Barcode's infringement claims allege that Albertsons itself performs some claim elements, while an Albertsons customer performs other claim elements, requiring dismissal because no single actor performs all steps of the patent's method claims. Mot. § II. In a brief and tepid response citing no relevant law, Opp. at 10, Wolverine Barcode tries to save its claims, but cannot do so.[3]

Plaintiff first claims that "careful consideration" of its infringement claims shows "that it is Defendant who controls all aspects of its infringing process." Opp. at 10. But the Court cannot credit this assertion as "review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss." *U.S. S.E.C. v. ConnectAJet.com, Inc.*, No. 09-1742, 2010 WL 2484280, at *2 (N.D. Tex. June 17, 2020); *see* Mot. § II. But even if it were in the complaint, this is just the kind of "threadbare recital[] of the elements of a cause of action" that "do[es] not suffice." *David Austin Roses Ltd. v. GCM Ranch LLC*, 764 F. Supp. 3d 474, 479 (N.D. Tex. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff submits conclusory allegations rather than facts because no facts can support its conclusory allegations. Plaintiff claims that Albertsons "controls all aspects" of "scanning a customer's bar code," but its infringement claims state that "when a customer opens the Albertsons app and chooses Albertsons Cash, the system generates a one-time 3PL code." Opp. at 10; Compl. Ex. B at 5. "**The customer then scans that code at checkout** to pay directly from their Albertsons Cash balance." Compl. Ex. B at 5 (emphasis added). Wolverine Barcode does

---

[3] In this section of its brief (Opp. at 10), plaintiff cites only *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F. 3d 1256, 1260 (Fed. Cir. 2018), which simply restates the well-known standard of *Twombly* and *Iqbal*. *Disc Disease* cannot help plaintiff avoid Albertsons' divided infringement arguments, and plaintiff does not explain how it can.

– 7 –

not and cannot explain how Albertsons "controls" the customer's decision to "pay directly from their Albertsons Cash balance," or to "scan[] that code at checkout" to do so.  Opp. at 10; Compl. Ex. B at 5.  Wolverine Barcode also mentions "providing customers with applications configured by Defendant," but its infringement claims do not discuss "providing customers with applications" or even mention any "application" at all.  Opp. at 10; *see generally* Compl. Ex. B.

Wolverine Barcode's own examples confirm the failure of its argument, but they are not the only examples of its failure.  Plaintiff's infringement claims also confirm the customer practices element (e) of the claim, "depositing funds in said User Account to establish a credit limit."  Mot. at 10.  Wolverine Barcode does not address or even mention this element or Albertsons' argument about it, thus waiving any response, as "failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue." *Arkansas v. Wilmington Trust Nat'l Ass'n*, No. 18-1481, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).  Plaintiff tenders no response because it has none:  there is no way that Albertsons "controls" the customer's decision to "**deposit funds** into your in-app account so that you can earn or redeem **cash back** rewards when you check out."  Compl. Ex. B at 11 (emphasis in original).  There are more examples, but that is enough:  infringement can occur only if "all steps of a claimed method are performed by or attributable to a single entity," and that cannot occur here.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2016); *see* Mot. § II.  Wolverine Barcode next claims, again without explanation or citation, that Albertsons and its customer perform the steps of the method "all for Defendant's benefit."  Opp. at 10.  Again, this allegation is not in the complaint, and so the Court cannot consider it.  *See Wilmington Trust*, 2020 WL 1249570, at *5.  But if it were in the complaint, this allegation would require dismissal.  A "joint

enterprise" requires, among other things, "a common purpose to be carried out by the group" and "a community of pecuniary interest in that purpose, among the members." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  If a series of steps are "all for Defendant's benefit," as plaintiff argues, Albertsons and its customer cannot form a "joint enterprise," and plaintiff cannot avoid divided infringement. *Akamai*, 797 F.3d at 1022-23.

### III.     The Response Concedes That the Complaint Fails to Allege Indirect Infringement

The complaint fails to allege indirect infringement.  Mot. § III.  Plaintiff does not address or even mention Albertsons' arguments on this point in its opposition, which "constitutes waiver or abandonment of that issue." *Wilmington Trust*, 2020 WL 1249570, at *5.

### IV.     The Court Should Deny Leave to Amend the Complaint

Although the "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[l]eave to amend is not automatic," and "decisions concerning motions to amend are left to the sound discretion of the court." *Finch v. Davis*, No. 17-209, 2018 WL 10582158, at *1 (N.D. Tex. Mar. 6, 2018).[4]  A district court may dismiss without leave to amend where plaintiff's "proposed amendments" to the complaint would not "cure the defects." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1288 (Fed. Cir. 2024).  Since "[n]o amendment to a complaint can alter what a patent itself states," the Court should deny leave to amend if it finds unpatentable subject matter. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F. 4th 698, 706 (Fed. Cir. 2023).

But even if the Court dismisses on grounds other than patent eligibility, it should deny leave to amend.  Although a "party seeking to amend a pleading under Rule 15(a) need not always file a formal motion," such a party "must 'give the court some notice of the nature of his

---

[4] The Federal Circuit "appl[ies] regional circuit law to district court 'procedural decisions that relate to issues not unique to [its] exclusive jurisdiction, including motions for leave to amend.'" *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1357 (Fed. Cir. 2021) (quoting *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009)).

– 9 –

or her proposed amendments' and support the request for leave to amend with '*some* specificity' which is required." *Fischer v. Fischer*, No. 20-2173, 2021 WL 1720213, at *8 (N.D. Tex. Apr. 30, 2021) (emphasis in original) (quoting *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590-91 (5th Cir. 2016)). "A plaintiff that simply 'tack[s] on a general curative amendment request' in response to a motion to dismiss does not provide a sufficient basis for why the court should grant leave." *Id.* at *8 (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003)). But that is all that plaintiff does here. *See* Opp. at 10-11. A district court does "not abuse its discretion in denying the plaintiff leave to amend where, as here, the plaintiff: (1) did not amend [its] complaint as a matter of right, (2) submitted a general curative request to amend her complaint in [its] response to the motion to dismiss, (3) did not submit a proposed amended complaint to the court, and (4) failed to provide 'some specificity' to the court and defendant of the substance of [its] proposed amendment." *Fischer*, 2021 WL 1720213, at *9 (quoting *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002)). All of that happened here, and the Court should therefore deny plaintiff leave to amend the complaint.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Albertsons' motion, the Court should dismiss Wolverine Barcode's complaint, and deny leave to amend.

Date: January 23, 2026                             Respectfully submitted,

*/s/ Sarah E. Spires*
Sarah E. Spires (Texas Bar No. 24083860)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
sspires@skiermontderby.com

Matthew S. Warren (California Bar No. 230565)

– 10 –

          (admitted *pro hac vice*)
          Jessica Lord (California Bar No. 359585)
          (admitted *pro hac vice*)
          WARREN LLP
          2261 Market Street No. 606,
          San Francisco, California 94114
          Telephone: (415) 895-2940
          Fax: (415) 895-2964
          25-1448@cases.warrenllp.com

          *Attorneys for Defendant*
          *Albertsons Companies, Inc.*

### **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

          */s/ Sarah E. Spires*