# Exhibit 11

Appx054



June 1, 2026

Sarah E. Spires
Skiermont Derby LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201

Re: No. 3:25-cv-01448-G (N.D. Tex.)

Dear Sarah,

This statement sets out Wolverine's preliminary reasonable-royalty analysis for Albertsons' use of the in-app barcode/QR touchless-payment functionality marketed as "Albertsons Cash" (the "Accused Instrumentality"), which Wolverine contends practices claims 1–3 of U.S. Patent No. 9,280,689. It is provided to inform early resolution discussions. The figures below are preliminary, are based on publicly available information, and are expected to increase once Albertsons produces the transaction-level and financial data within its sole possession.

**I. Framework**

Damages for patent infringement are measured by no less than a reasonable royalty under 35 U.S.C. § 284, determined through the hypothetical arm's-length negotiation the parties would have conducted at the inception of infringement. For purposes of this analysis, liability (validity and infringement) is assumed, as it must be in any damages framework; Wolverine's infringement contentions are set out in its claim chart served with the Complaint. The recoverable period extends, at a minimum, six years before the Complaint under 35 U.S.C. § 286 (i.e., from June 6, 2019), and continues through trial. As a non-practicing licensing entity, Wolverine seeks a reasonable royalty rather than lost profits.

**II. Royalty Methodology**

The '689 patent is directed to conducting offline commerce transactions in which a user is identified by a barcode at the point of sale and payment is authorized against a managed account—the precise architecture Albertsons employs in its in-app payment flow. The economic value of that method is captured most directly on a *per-transaction*

basis, consistent with the patent's own teaching: the specification identifies the elimination of conventional third-party card-processing cost on each transaction (on the order of $0.35 per transaction) as a core advantage of the invention. A per-transaction royalty also satisfies apportionment—it isolates the value of the patented payment method itself, rather than the value of the groceries or the broader app.

Wolverine therefore applies a per-transaction royalty to the volume of accused barcode-payment transactions over the recoverable period. The lower bound reflects a modest convenience-fee royalty; the upper bound reflects a share of the per-transaction processing cost the patented method is designed to avoid.

### III. Indicative Royalty Range

The following calculation is illustrative and conservative. The transaction-volume input is an estimate derived from Albertsons' publicly reported loyalty engagement (approximately 49 million loyalty members, with app-based features used by a substantial share of engaged households); the actual figure, which only Albertsons holds, is expected to be higher. All inputs are stated openly so the parties can refine them as data is produced.

| Input | Conservative | Leverage |
|---|---|---|
| Royalty per accused transaction | $0.005 – $0.01 | $0.05 – $0.10 |
| Est. accused transactions / year | ~75 million | ~150 million |
| Recoverable years (§ 286, 2019–present) | 6 | 6 |
| **Indicative reasonable royalty** | **~$2 – 9 million** | **~$45 – 90 million** |

*Figures are preliminary and based on public information; they are subject to upward revision once Albertsons produces accused-transaction counts, the date the feature was first deployed, and its per-transaction payment-processing economics.*

### IV. Why Early Resolution Is in Both Parties' Interest

- The royalty base is large and grows with each passing quarter of continued use; the longer the matter runs, the larger the accrued exposure.

- The core damages inputs are within Albertsons' sole control, and the discovery Wolverine will pursue is narrowly targeted at transaction volumes and payment economics that Albertsons can readily quantify.

- A negotiated, paid-up license now resolves all accrued and future exposure on the '689 patent at a fraction of the litigated range above and without the cost and disruption of fact and expert discovery, motion practice, and trial.

2

## V. Proposal

To resolve this matter promptly, Wolverine proposes a fully paid-up, non-exclusive license to the '689 patent for a one-time payment of **[settlement figure to be inserted]**, reflecting a substantial discount to the litigated exposure described above in exchange for early resolution. Wolverine is prepared to discuss structure and timing and to enter a standstill while the parties negotiate. We welcome a call at Albertsons' earliest convenience.

### Appendix — Public Information Relied Upon

| Item | Source |
|---|---|
| Total net sales ~$79.2B; ~2,270 stores across 34 states / 20 banners | Albertsons Cos. SEC filings; FY2024 results reporting |
| Loyalty membership ~45.6M (Q4 FY24), ~49M (Q3 FY25); app-based rewards widely used by engaged households | Albertsons earnings releases; industry trade reporting |
| Digital sales +24% YoY; loyalty/payment integrated into the mobile app | Albertsons earnings releases (FY2024–FY2025) |
| '689 patent issued Mar. 8, 2016; barcode/QR point-of-sale payment method | U.S. Patent No. 9,280,689; Complaint and claim chart |

*This communication is made for settlement purposes only and is inadmissible under Fed. R. Evid. 408. Nothing herein is an admission, and Wolverine reserves all rights.*

We will be seeking discovery in line with these numbers.

Please let me know when we can discuss.

Sincerely,

William P. Ramey, III

3