# Exhibit 12

Appx058

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **WOLVERINE BARCODE IP LLC,** | § | Civil Action No. 3:25-cv-01448-G |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **ALBERTSONS COMPANIES, INC.,** | § | |
| Defendant. | § | |

---

### PLAINTIFF WOLVERINE BARCODE IP LLC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT ALBERTSONS COMPANIES, INC. (NOS. 1–25)

**TO DEFENDANT ALBERTSONS COMPANIES, INC. AND ITS ATTORNEYS OF RECORD:**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Wolverine Barcode IP LLC requests that Defendant Albertsons Companies, Inc. produce the DOCUMENTS and THINGS described below for inspection and copying at the offices of Ramey LLP, or at such other time, place, and manner as the parties may agree, within thirty (30) days of service.

### I.  DEFINITIONS

1.  **"ALBERTSONS," "YOU," and "YOUR"** mean Defendant Albertsons Companies, Inc., and its present and former parents, subsidiaries, divisions, affiliates, predecessors, and successors in interest, including its operating banners (such as, without limitation, Albertsons, Safeway, Vons, Pavilions, Jewel-Osco, ACME, Shaw's, Star Market, Tom Thumb, Randalls, United Supermarkets, Market Street, Carrs, Haggen, and Kings/Balducci's), together with their respective officers, directors, employees, agents, attorneys, consultants, representatives, and all other persons or entities acting or purporting to act on their behalf.

2.  **"WOLVERINE" and "PLAINTIFF"** mean Plaintiff Wolverine Barcode IP LLC.

3.  **"'689 PATENT"** means U.S. Patent No. 9,280,689, titled "Method and Apparatus for Conducting Offline Commerce Transactions," including its file history and any reexamination or reissue thereof.

4.  **"ASSERTED CLAIMS"** means claims 1, 2, and 3 of the '689 PATENT, and any additional claim of the '689 PATENT that WOLVERINE may assert in this action.

---

5.    **"ACCUSED INSTRUMENTALITY"** means the in-application barcode and QR-code payment functionality marketed, branded, or offered as "Albertsons Pay," "Albertsons Cash," and/or "DirectPay" within the Albertsons "for U" (formerly "just for U") and other banner mobile applications, including without limitation: the generation of a one-time or tokenized PERSONAL CODE (such as a token bearing the "3PL:" prefix); the conversion of that code into a USER ID BARCODE displayed for scanning at checkout; the associated USER ACCOUNT and any funding, deposit, "Cash Back," or CREDIT LIMIT mechanism; and the point-of-sale scanning, server-side detection, fund-or-credit comparison, and approval functionality charted in Exhibit B to the Complaint — together with all predecessor, successor, and substantially similar versions, releases, or implementations of that functionality.

6.    **"PERSONAL CODE," "USER ID BARCODE," "USER ACCOUNT," "USER VENDOR MANAGEMENT SERVER," "VENDOR SERVER," "CREDIT LIMIT," and "APPROVAL SIGNAL"** have the meanings given to the corresponding terms in claim 1 of the '689 PATENT and, as used in these Requests, also refer to the corresponding components, data, servers, or functionality of the ACCUSED INSTRUMENTALITY identified in Exhibit B to the Complaint.

7.    **"ACCUSED TRANSACTION"** means any purchase, payment, or commerce transaction in the United States that is settled, authorized, processed, or completed, in whole or in part, through the ACCUSED INSTRUMENTALITY.

8.    **"DOCUMENT" and "DOCUMENTS"** are used in the broadest sense permitted by Federal Rules of Civil Procedure 26 and 34 and Federal Rule of Evidence 1001, and include all writings, recordings, and electronically stored information ("ESI") of every kind, however stored or maintained, including drafts, metadata, embedded data, attachments, and non-identical copies, regardless of format or medium.

9.    **"COMMUNICATION"** means any transmission, exchange, or transfer of information, whether oral or written, including emails, text and instant messages, chat or collaboration messages (e.g., Slack or Teams), letters, memoranda, presentations, and notes of meetings or calls.

10.    **"ESI"** means electronically stored information within the meaning of Federal Rule of Civil Procedure 34(a)(1)(A).

11.    **"SOURCE CODE"** means human-readable programming instructions and associated materials for the ACCUSED INSTRUMENTALITY, including source files, header files, build and make files, configuration files, scripts, comments, and version-control or revision history.

12.    **"PERSON"** means any natural person or any business, corporate, legal, or governmental entity or association.

13.    **"CONCERNING," "RELATING TO," and "REGARDING"** mean, in whole or in part, relating to, referring to, reflecting, describing, evidencing, constituting, embodying, comprising, identifying, stating, mentioning, discussing, analyzing, or otherwise pertaining to.

14.    **"IDENTIFY"**, as to a DOCUMENT, means to state its type, author(s), recipient(s), date, general subject matter, and Bates range if produced; and, as to a PERSON, means to state the PERSON's name, last known address, and relationship to YOU.

15.    **"RELEVANT TIME PERIOD"** means June 6, 2019 (six years before the filing of the Complaint on June 6, 2025, see 35 U.S.C. § 286) through the present, and these Requests call for supplementation through the date of trial, unless a particular Request specifies otherwise.

16.    **"LICENSE AGREEMENT"** means any license, sublicense, covenant not to sue, release, settlement agreement, or other agreement granting or receiving rights under any patent or other intellectual property.

17.    **"THING"** has the meaning given in Federal Rule of Civil Procedure 34(a)(1)(B).

## II.   INSTRUCTIONS

1.    These Requests are served under Rules 26 and 34 of the Federal Rules of Civil Procedure. YOU must serve a written response within thirty (30) days of service and produce all responsive DOCUMENTS and THINGS in YOUR possession, custody, or control.

2.    Produce DOCUMENTS as they are kept in the usual course of business, or organize and label them to correspond to the categories in these Requests, in accordance with Rule 34(b)(2)(E)(i).

3.    Produce ESI in accordance with any ESI protocol or order entered in this action. Absent such an order, produce ESI as single-page TIFF images with corresponding searchable extracted text and load files, and produce in native format those DOCUMENTS that do not reasonably convert to image format (e.g., spreadsheets, databases, and SOURCE CODE), in each case preserving all reasonably accessible metadata.

4.    If YOU withhold any DOCUMENT under a claim of privilege or work-product protection, provide a privilege log sufficient to satisfy Rule 26(b)(5)(A). If YOU redact any DOCUMENT, identify each redaction and the basis for it.

5.      If YOU object to a Request in part, respond to the remainder and state whether any responsive materials are being withheld on the basis of the objection, as required by Rule 34(b)(2)(C).

6.      These Requests are continuing. YOU must seasonably supplement YOUR responses and production under Rule 26(e).

7.      If responsive DOCUMENTS once existed but have been lost, destroyed, or are otherwise no longer in YOUR possession, custody, or control, IDENTIFY each such DOCUMENT, state the date and circumstances of its loss or destruction, and identify each PERSON with knowledge.

8.      If no DOCUMENT is responsive to a particular Request, state so in writing.

9.      Unless a Request specifies otherwise, each Request is limited to the RELEVANT TIME PERIOD.

## III.   REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**  DOCUMENTS sufficient to identify each version, release, or material modification of the ACCUSED INSTRUMENTALITY offered, used, or made available in the United States, and the date on which each became available to consumers.

**REQUEST FOR PRODUCTION NO. 2:**  Technical DOCUMENTS — including architecture and data-flow diagrams, design and functional specifications, requirements documents, interface and API documentation, and engineering wikis — sufficient to show the design, structure, and end-to-end operation of the ACCUSED INSTRUMENTALITY, from a consumer's enrollment through completion of a purchase.

**REQUEST FOR PRODUCTION NO. 3:**  DOCUMENTS CONCERNING how the ACCUSED INSTRUMENTALITY generates a PERSONAL CODE (including any token bearing the "3PL:" prefix), converts the PERSONAL CODE into the USER ID BARCODE displayed at checkout, and uses any prefix, suffix, or special character to distinguish the USER ID BARCODE from a product barcode. ['689 Patent, claim 1(a)–(b).]

**REQUEST FOR PRODUCTION NO. 4:**  DOCUMENTS CONCERNING the storage of the PERSONAL CODE and USER ID BARCODE on a consumer's device (including on a cell phone, or on a label or card), the creation and maintenance of the USER ACCOUNT, and the server or servers (including any USER VENDOR MANAGEMENT SERVER or VENDOR SERVER functionality) on which the PERSONAL CODE, account balance, and CREDIT LIMIT or "Cash Back" limit are stored. ['689 Patent, claim 1(c)–(e) and claims 2–3.]

**REQUEST FOR PRODUCTION NO. 5:**  DOCUMENTS CONCERNING the point-of-sale process by which the USER ID BARCODE and product barcodes are scanned at the register,

transmitted to YOUR server or servers, detected at the server as a USER ID BARCODE, compared against available funds or CREDIT LIMIT, and by which an APPROVAL SIGNAL is generated and returned to the register to complete the sale. ['689 Patent, claim 1(f)–(j).]

**REQUEST FOR PRODUCTION NO. 6:**  To the extent not produced in response to the foregoing Requests, SOURCE CODE and related developer documentation sufficient to show the operation of the functionality charted in Exhibit B to the Complaint, to be produced in accordance with the Protective Order and any source-code-review protocol entered in this action.

**REQUEST FOR PRODUCTION NO. 7:**  DOCUMENTS CONCERNING YOUR direction or control over consumers' use of the ACCUSED INSTRUMENTALITY, including terms of use, conditions of enrollment, and DOCUMENTS showing whether access to the payment benefit is conditioned on a consumer's performance of one or more steps (for example, funding the USER ACCOUNT, or displaying and presenting the USER ID BARCODE for scanning) and whether YOU establish the manner or timing of those steps.

**REQUEST FOR PRODUCTION NO. 8:**  DOCUMENTS sufficient to identify each third party (including payment processors, point-of-sale or scanner vendors, application developers, and cloud or hosting providers) that designs, operates, hosts, maintains, or performs any portion of the ACCUSED INSTRUMENTALITY, and all agreements with each such third party CONCERNING the ACCUSED INSTRUMENTALITY.

**REQUEST FOR PRODUCTION NO. 9:**  DOCUMENTS CONCERNING YOUR awareness or knowledge of the '689 PATENT, Marvin T. Ling, or WOLVERINE, including any patent-clearance, freedom-to-operate, validity, or non-infringement analysis CONCERNING the ACCUSED INSTRUMENTALITY, and DOCUMENTS sufficient to show the date YOU first became aware of the '689 PATENT.

**REQUEST FOR PRODUCTION NO. 10:**  DOCUMENTS — including user guides, in-application prompts, help-center content, training materials, and marketing or instructional content — by which YOU instruct, encourage, or enable consumers or store personnel to use the ACCUSED INSTRUMENTALITY in the manner charted in Exhibit B to the Complaint.

**REQUEST FOR PRODUCTION NO. 11:**  DOCUMENTS CONCERNING any alternative payment, identification, or loyalty technology that YOU considered, evaluated, designed around, or implemented in lieu of the accused barcode-and-account authorization functionality, including the cost, technical feasibility, and timing of each such alternative.

**REQUEST FOR PRODUCTION NO. 12:**  DOCUMENTS sufficient to show, on a monthly or quarterly basis during the RELEVANT TIME PERIOD, the number of ACCUSED TRANSACTIONS in the United States, broken out by operating banner where available.

**REQUEST FOR PRODUCTION NO. 13:**  DOCUMENTS sufficient to show the total dollar value (gross merchandise value) of ACCUSED TRANSACTIONS during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 14:**  DOCUMENTS sufficient to show the number of consumers who enrolled in or used the ACCUSED INSTRUMENTALITY during the RELEVANT TIME PERIOD, and the relationship between that population and the membership of YOUR "for U" or other loyalty or rewards program.

**REQUEST FOR PRODUCTION NO. 15:**  DOCUMENTS sufficient to show the share or percentage of YOUR total in-store transactions that were settled through the ACCUSED INSTRUMENTALITY during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 16:**  DOCUMENTS sufficient to show the date on which the ACCUSED INSTRUMENTALITY — and each material accused feature charted in Exhibit B to the Complaint — was first made available to consumers, by operating banner.

**REQUEST FOR PRODUCTION NO. 17:**  Financial DOCUMENTS — including profit-and-loss statements, cost-accounting records, and internal management or financial reporting — sufficient to show the revenues, costs, margins, and profitability associated with the ACCUSED INSTRUMENTALITY.

**REQUEST FOR PRODUCTION NO. 18:**  DOCUMENTS CONCERNING the transaction costs, processing fees, or interchange that YOU avoid, reduce, or displace by settling ACCUSED TRANSACTIONS through the ACCUSED INSTRUMENTALITY rather than through third-party card networks or processors, including any per-transaction cost savings.

**REQUEST FOR PRODUCTION NO. 19:**  DOCUMENTS CONCERNING the benefits YOU attribute to the ACCUSED INSTRUMENTALITY, including its effect on loyalty enrollment, application engagement, repeat visits, transaction frequency, basket size or average ticket, customer retention, and the collection, use, or monetization of consumer data.

**REQUEST FOR PRODUCTION NO. 20:**  Business plans, strategic plans, board and management presentations, marketing plans, and return-on-investment or business-case analyses CONCERNING the ACCUSED INSTRUMENTALITY and its role in YOUR payments, loyalty, or digital-engagement strategy.

**REQUEST FOR PRODUCTION NO. 21:**  DOCUMENTS sufficient to identify the smallest component, module, feature, or service within YOUR systems that performs the accused barcode-and-account authorization, and DOCUMENTS sufficient to show any internal cost, budget, headcount, or valuation attributable to that component, module, feature, or service.

**REQUEST FOR PRODUCTION NO. 22:**  All LICENSE AGREEMENTS, royalty agreements, and settlement agreements to which YOU are a party CONCERNING payment, mobile-wallet,

tokenization, loyalty, barcode, or QR-code identification technology, including DOCUMENTS reflecting the royalty rates, lump sums, or revenue shares paid or received, and any DOCUMENTS reflecting a customary, standard, or "blended" royalty rate that YOU apply to, or characterize as applicable to, technology or rights core to YOUR business.

**REQUEST FOR PRODUCTION NO. 23:**  DOCUMENTS sufficient to identify the legal entity or entities that own, operate, control, and derive revenue from the ACCUSED INSTRUMENTALITY, and DOCUMENTS sufficient to show YOUR corporate and operating-banner structure as it relates to the ACCUSED INSTRUMENTALITY.

**REQUEST FOR PRODUCTION NO. 24:**  DOCUMENTS CONCERNING any other litigation, inter partes review, reexamination, post-grant proceeding, licensing discussion, or assertion involving the '689 PATENT or the ACCUSED INSTRUMENTALITY.

**REQUEST FOR PRODUCTION NO. 25:**  DOCUMENTS on which YOU intend to rely to support any defense or to limit damages in this action, including any contention of non-infringement or invalidity and any limitation under 35 U.S.C. § 286 or § 287, together with DOCUMENTS CONCERNING any marking of, or notice concerning, the '689 PATENT.

Dated: June 18, 2026

Respectfully submitted,

RAMEY LLP

/s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
(832) 900-4941 (facsimile)

**ATTORNEYS FOR PLAINTIFF**
**WOLVERINE BARCODE IP LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 18, 2026, a true and correct copy of the foregoing was served on all counsel of record by electronic mail in accordance with Federal Rule of Civil Procedure 5(b). These Requests are not filed with the Court. See Fed. R. Civ. P. 5(d)(1).

/s/ William P. Ramey, III
William P. Ramey, III

★ ATTORNEY BACK MATTER — DELETE THIS PAGE AND EVERYTHING BELOW BEFORE SERVING ★

*(Attorney work product — not for production)*

## A. Bracketed fields to complete before serving

• Service date (two places: signature block and certificate of service); 21-/30-day computation per the scheduling order.

• Defense counsel of record for the certificate of service (and confirm service method — email vs. the Court's ECF, since discovery is served, not filed).

• Case caption / judge initials — see item D. Conform the caption to the currently assigned judge before serving.

• Confirm the firm address/contact in the signature block. The Albertsons complaint uses 5020 Montrose Blvd., Suite 800, Houston, TX 77006 (used here); the current firm letterhead shows 446 Heights Blvd., Suite 200, Houston, TX 77007. Confirm which is operative.

• Cross-reference the Protective Order and any ESI protocol once entered (Instruction 3 and RFP 6).

## B. Record items to verify (per standing citation/no-fabrication rules)

• '689 Patent facts — No. 9,280,689; issued Mar. 8, 2016; inventor Marvin T. Ling; provisional 61/385,022 (filed Sept. 21, 2010); PCT/US2011/047862 (filed Aug. 16, 2011); 101 days PTA; confirm the ~2031 expiration on Patent Center. [VERIFY CITATION]

• Asserted claims 1–3 — confirmed against Complaint ¶¶ 8, 11 (alleging infringement of "claims 1-3"). [VERIFY CITATION]

• Filing date June 6, 2025 and the § 286 reach-back date of June 6, 2019 used in the RELEVANT TIME PERIOD definition — confirm against the docket. [VERIFY CITATION]

• 35 U.S.C. §§ 284, 286, 287 and Fed. R. Civ. P. 5, 26, 34 references — confirm before serving. [VERIFY CITATION]

## C. Strategic notes — internal only

• **Divided/joint infringement is the lynchpin.** Claim 1 is a multi-actor method claim (the consumer funds the account, displays, and presents the USER ID BARCODE; Albertsons' servers/registers do the rest). RFPs 7, 8, and 10 are built to develop the Akamai V direction-and-control theory — that Albertsons conditions the payment benefit on the consumer's steps and prescribes the manner. Expect this to be the lead non-infringement theme.

• **Transaction count and adoption rate are the damages keystones.** The demand letter's base scales entirely with the count of ACCUSED TRANSACTIONS (and the ~2%

adoption placeholder). RFPs 12, 13, 15, and 16 target exactly those numbers; RFP 14 isolates the enrolled-user population for the per-user cross-check (note: 45M+ "for U" loyalty members ≠ accused-payment users).

• **Per-transaction rate basis.** The demand anchors the per-transaction royalty to the card-processing cost the method displaces ('689 patent, cols. 5–6). RFP 18 pulls Albertsons' avoided interchange/processing cost; RFP 21 develops the SSPPU/apportionment component.

• **Accused-product precision.** The chart leans on marketing/FAQ pages for elements (g)–(h) (server-side detection, fund comparison, approval signal). RFP 5 (and SOURCE CODE in RFP 6) are aimed squarely at hardening that proof before expert reports.

• **§ 101 exposure.** Barcode-based payment authorization is exposed to an Alice abstract-idea challenge; keep the technical-improvement record (RFPs 2, 5) in view.

• **Companion discovery.** These 25 RFPs pair with the planned 12 interrogatories (contention infringement/claim-construction positions; damages bases and apportionment; comparable licenses; pre-/post-suit knowledge and willfulness; non-infringing alternatives; and joint-infringement direction-and-control). The Definitions block above is drafted to be shared verbatim across both sets.

## D. Assigned judge / AI-disclosure check

• The case number filed of record is 3:25-cv-01448-G. In N.D. Tex., the "-G" initial designates Senior Judge A. Joe Fish.

• But N.D. Tex. Dallas Division Special Order No. 3-352 directs that the clerk "will not assign to a senior judge any patent case." This patent case was therefore almost certainly redrawn to an active Dallas district judge after filing. Confirm the current assignment on the docket and conform the caption/case-number initials before serving.

• Generative-AI rule: if the case is (or has been) assigned to Judge Brantley Starr, his standing order requires a certification regarding any use of generative AI in drafting; other judges may have individual rules. [VERIFY] These Requests are served, not filed, so no certification attaches to them — but verify the assigned judge's standing order before any AI-assisted filing in this matter.

## E. Source Archive (web sources relied upon for the judge/standing-order points)

*Accessed June 18, 2026. Static PDF/HTML copies should be saved to the matter file; this sandbox's network is limited to package mirrors, so copies could not be downloaded here. A machine-readable index is saved alongside the deliverable as Source_Archive.md.*

| Source / URL | Title | Publisher | Proposition supported |
|---|---|---|---|
| txnd.uscourts.gov/judge/senior-district-judge-joe-fish | Senior District Judge A. Joe Fish | U.S. District Court, N.D. Tex. | "-G" case-number initial designates Judge Fish. |

| Source / URL | Title | Publisher | Proposition supported |
|---|---|---|---|
| txnd.uscourts.gov/sites/default/files/orders/3-352.pdf | Special Order No. 3-352 (Dallas Division case assignment) | U.S. District Court, N.D. Tex. | Clerk will not assign any patent case to a senior judge → patent cases redrawn to active judges. |
| txnd.uscourts.gov/location/dallas | Dallas Division (judge roster / Special Order 3) | U.S. District Court, N.D. Tex. | Active Dallas judges available for assignment. |