# Exhibit 13

Appx070

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **WOLVERINE BARCODE IP LLC,** | § | Civil Action No. 3:25-cv-01448-G |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **ALBERTSONS COMPANIES, INC.,** | § | |
| Defendant. | § | |

---

**PLAINTIFF WOLVERINE BARCODE IP LLC'S FIRST SET OF
INTERROGATORIES TO DEFENDANT ALBERTSONS COMPANIES, INC.
(NOS. 1–12)**

**TO DEFENDANT ALBERTSONS COMPANIES, INC. AND ITS ATTORNEYS OF RECORD:**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Wolverine Barcode IP LLC requests that Defendant Albertsons Companies, Inc. answer the following Interrogatories separately, fully, in writing, and under oath within thirty (30) days of service.

## I.  DEFINITIONS

1. **"ALBERTSONS," "YOU," and "YOUR"** mean Defendant Albertsons Companies, Inc., and its present and former parents, subsidiaries, divisions, affiliates, predecessors, and successors in interest, including its operating banners (such as, without limitation, Albertsons, Safeway, Vons, Pavilions, Jewel-Osco, ACME, Shaw's, Star Market, Tom Thumb, Randalls, United Supermarkets, Market Street, Carrs, Haggen, and Kings/Balducci's), together with their respective officers, directors, employees, agents, attorneys, consultants, representatives, and all other persons or entities acting or purporting to act on their behalf.

2. **"WOLVERINE" and "PLAINTIFF"** mean Plaintiff Wolverine Barcode IP LLC.

3. **"'689 PATENT"** means U.S. Patent No. 9,280,689, titled "Method and Apparatus for Conducting Offline Commerce Transactions," including its file history and any reexamination or reissue thereof.

4. **"ASSERTED CLAIMS"** means claims 1, 2, and 3 of the '689 PATENT, and any additional claim of the '689 PATENT that WOLVERINE may assert in this action.

---

5. **"ACCUSED INSTRUMENTALITY"** means the in-application barcode and QR-code payment functionality marketed, branded, or offered as "Albertsons Pay," "Albertsons Cash," and/or "DirectPay" within the Albertsons "for U" (formerly "just for U") and other banner mobile applications, including without limitation: the generation of a one-time or tokenized PERSONAL CODE (such as a token bearing the "3PL:" prefix); the conversion of that code into a USER ID BARCODE displayed for scanning at checkout; the associated USER ACCOUNT and any funding, deposit, "Cash Back," or CREDIT LIMIT mechanism; and the point-of-sale scanning, server-side detection, fund-or-credit comparison, and approval functionality charted in Exhibit B to the Complaint — together with all predecessor, successor, and substantially similar versions, releases, or implementations of that functionality.

6. **"PERSONAL CODE," "USER ID BARCODE," "USER ACCOUNT," "USER VENDOR MANAGEMENT SERVER," "VENDOR SERVER," "CREDIT LIMIT," and "APPROVAL SIGNAL"** have the meanings given to the corresponding terms in claim 1 of the '689 PATENT and, as used in these Interrogatories, also refer to the corresponding components, data, servers, or functionality of the ACCUSED INSTRUMENTALITY identified in Exhibit B to the Complaint.

7. **"ACCUSED TRANSACTION"** means any purchase, payment, or commerce transaction in the United States that is settled, authorized, processed, or completed, in whole or in part, through the ACCUSED INSTRUMENTALITY.

8. **"DOCUMENT" and "DOCUMENTS"** are used in the broadest sense permitted by Federal Rules of Civil Procedure 26 and 34 and Federal Rule of Evidence 1001, and include all writings, recordings, and electronically stored information ("ESI") of every kind, however stored or maintained, including drafts, metadata, embedded data, attachments, and non-identical copies, regardless of format or medium.

9. **"COMMUNICATION"** means any transmission, exchange, or transfer of information, whether oral or written, including emails, text and instant messages, chat or collaboration messages (e.g., Slack or Teams), letters, memoranda, presentations, and notes of meetings or calls.

10. **"ESI"** means electronically stored information within the meaning of Federal Rule of Civil Procedure 34(a)(1)(A).

11. **"SOURCE CODE"** means human-readable programming instructions and associated materials for the ACCUSED INSTRUMENTALITY, including source files, header files, build and make files, configuration files, scripts, comments, and version-control or revision history.

12. **"PERSON"** means any natural person or any business, corporate, legal, or governmental entity or association.

13. **"CONCERNING," "RELATING TO," and "REGARDING"** mean, in whole or in part, relating to, referring to, reflecting, describing, evidencing, constituting, embodying, comprising, identifying, stating, mentioning, discussing, analyzing, or otherwise pertaining to.

14. **"IDENTIFY"**, as to a DOCUMENT, means to state its type, author(s), recipient(s), date, general subject matter, and Bates range if produced; as to a PERSON, means to state the PERSON's name, last known address, and relationship to YOU; and, as to a fact, contention, or thing, means to describe it with the particularity called for by the Interrogatory.

15. **"RELEVANT TIME PERIOD"** means June 6, 2019 (six years before the filing of the Complaint on June 6, 2025, see 35 U.S.C. § 286) through the present, and these Interrogatories call for supplementation through the date of trial, unless a particular Interrogatory specifies otherwise.

16. **"LICENSE AGREEMENT"** means any license, sublicense, covenant not to sue, release, settlement agreement, or other agreement granting or receiving rights under any patent or other intellectual property.

17. **"THING"** has the meaning given in Federal Rule of Civil Procedure 34(a)(1)(B).

The terms "AND" and "OR" shall be construed conjunctively or disjunctively as necessary to bring within the scope of these Interrogatories all information that might otherwise be construed to be outside their scope; "ALL," "ANY," and "EACH" each mean "any and all"; and the singular includes the plural and vice versa.

## II.  INSTRUCTIONS

1. These Interrogatories are served under Rule 33 of the Federal Rules of Civil Procedure. YOU must answer each Interrogatory separately, fully, in writing, and under oath within thirty (30) days of service.

2. Each answer must be verified by the PERSON making it, as required by Rule 33(b)(3) and (b)(5); any objection must be stated with specificity and signed by the attorney making it.

3. If YOU object to an Interrogatory in part, answer the remainder, and state whether any responsive information is being withheld on the basis of the objection.

4. Where Rule 33(d) applies, YOU may answer by specifying the business records from which the answer may be derived in sufficient detail to permit WOLVERINE to locate and

identify them as readily as YOU could, and by affording WOLVERINE a reasonable opportunity to examine and copy those records.

5.      These Interrogatories are continuing; YOU must seasonably supplement YOUR answers under Rule 26(e).

6.      If YOU lack the information necessary to answer an Interrogatory fully, answer it to the extent possible, state that YOU cannot answer it in full, and describe the efforts YOU made to obtain the information.

7.      Whenever an Interrogatory asks YOU to IDENTIFY a PERSON, DOCUMENT, fact, or thing, provide the information specified in the Definitions.

8.      Unless an Interrogatory specifies otherwise, each Interrogatory is limited to the RELEVANT TIME PERIOD.

## III.  INTERROGATORIES

**INTERROGATORY NO. 1:**  Describe in detail the design, structure, and operation of the ACCUSED INSTRUMENTALITY, including: how the PERSONAL CODE is generated; how the PERSONAL CODE is converted into the USER ID BARCODE; how any prefix, suffix, or special character distinguishes the USER ID BARCODE from a product barcode; where the PERSONAL CODE, USER ACCOUNT balance, and CREDIT LIMIT or "Cash Back" limit are stored; and how, at checkout, the USER ID BARCODE is scanned, transmitted to and detected at YOUR server or servers, compared against available funds or CREDIT LIMIT, and an APPROVAL SIGNAL is generated and returned to the register to complete the sale; and IDENTIFY the three PERSONS most knowledgeable about that design and operation.

**INTERROGATORY NO. 2:**  For each step of the accused payment flow described in response to Interrogatory No. 1, IDENTIFY each PERSON that performs, operates, hosts, or controls that step — distinguishing among YOU (and YOUR operating banners), the consumer, and any third party (such as a payment processor, point-of-sale or scanner vendor, application developer, or hosting provider) — and describe the role each such PERSON plays in performing that step.

**INTERROGATORY NO. 3:**  If YOU contend that YOU do not direct or control the consumer's performance of any step of the ACCUSED INSTRUMENTALITY (including funding the USER ACCOUNT and displaying or presenting the USER ID BARCODE for scanning at checkout), state all bases for that contention, and IDENTIFY each condition YOU place on a consumer's access to the payment functionality and each instruction YOU provide concerning the manner or timing of the consumer's performance.

**INTERROGATORY NO. 4:**  For each ASSERTED CLAIM, state whether YOU contend the ACCUSED INSTRUMENTALITY does not meet one or more limitations of that claim and, for

each limitation YOU so contend, IDENTIFY the limitation and state all factual and legal bases for the contention, including each DOCUMENT and PERSON supporting it.

**INTERROGATORY NO. 5:**  State all bases on which YOU contend any ASSERTED CLAIM is invalid or unenforceable, including under 35 U.S.C. §§ 101, 102, 103, and 112, and for each ground IDENTIFY the statutory basis, each item of prior art or other evidence relied upon (by patent or publication number, title, author, and date where applicable), and, for any obviousness contention, the specific combination of references and the motivation to combine them.

**INTERROGATORY NO. 6:**  State the date on which, and the circumstances under which, YOU first became aware of the '689 PATENT, Marvin T. Ling, or WOLVERINE; IDENTIFY each PERSON involved in or with knowledge of that awareness; and describe any analysis YOU undertook concerning infringement, validity, or designing around the '689 PATENT, and any action YOU took in response.

**INTERROGATORY NO. 7:**  IDENTIFY and describe each acceptable, available, non-infringing alternative to the ACCUSED INSTRUMENTALITY that YOU contend existed at any time during the RELEVANT TIME PERIOD, and for each state when it was or would have been available, its cost and time to design and implement, and all bases for YOUR contention that it is both acceptable and non-infringing.

**INTERROGATORY NO. 8:**  State, on a monthly or quarterly basis during the RELEVANT TIME PERIOD and by operating banner where available:

> (a) the number of ACCUSED TRANSACTIONS in the United States;
>
> (b) the total dollar value (gross merchandise value) of those ACCUSED TRANSACTIONS; and
>
> (c) the share or percentage of YOUR total in-store transactions that were settled through the ACCUSED INSTRUMENTALITY.

**INTERROGATORY NO. 9:**  State the number of consumers who enrolled in or used the ACCUSED INSTRUMENTALITY during the RELEVANT TIME PERIOD, broken out by operating banner and over time, and describe the relationship between that population and the membership of YOUR "for U" or other loyalty or rewards program.

**INTERROGATORY NO. 10:**  State the revenues, costs, and margins associated with the ACCUSED INSTRUMENTALITY during the RELEVANT TIME PERIOD, and state the per-transaction processing costs, fees, or interchange that YOU avoid, reduce, or displace by settling ACCUSED TRANSACTIONS through the ACCUSED INSTRUMENTALITY rather than through third-party card networks or processors.

**INTERROGATORY NO. 11:**  IDENTIFY the smallest component, module, feature, or service within YOUR systems that performs the accused barcode-and-account authorization; state any

internal cost, budget, or valuation attributed to that component, module, feature, or service; and describe each benefit YOU attribute to the ACCUSED INSTRUMENTALITY, including any effect on loyalty enrollment, application engagement, repeat visits, transaction frequency, basket size or average ticket, customer retention, and the collection, use, or monetization of consumer data.

**INTERROGATORY NO. 12:**    IDENTIFY each LICENSE AGREEMENT or settlement agreement to which YOU are a party CONCERNING payment, mobile-wallet, tokenization, loyalty, barcode, or QR-code identification technology — stating for each the parties, effective date, form and amount of consideration, and any royalty rate or revenue share; IDENTIFY any customary, standard, or "blended" royalty rate that YOU apply to, or characterize as applicable to, technology or rights core to YOUR business; and IDENTIFY the legal entity or entities that own, operate, control, and derive revenue from the ACCUSED INSTRUMENTALITY.

Dated: June 18, 2026

Respectfully submitted,

RAMEY LLP

/s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (facsimile)

**ATTORNEYS FOR PLAINTIFF**
**WOLVERINE BARCODE IP LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 18, 2026, a true and correct copy of the foregoing was served on all counsel of record by electronic mail in accordance with Federal Rule of Civil Procedure 5(b). These Interrogatories are not filed with the Court. See Fed. R. Civ. P. 5(d)(1).

/s/ William P. Ramey, III
William P. Ramey, III