**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| WOLVERINE BARCODE IP LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:25-CV-01448-B |
| ALBERTSONS COMPANIES, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF WOLVERINE BARCODE IP LLC'S RESPONSE IN**
**OPPOSITION TO DEFENDANT ALBERTSONS COMPANIES, INC.'S**
**MOTION FOR ATTORNEYS' FEES**

**<u>Use of Generative Artificial Intelligence</u>**

Parts of this filing were prepared with the assistance of generative artificial intelligence.

Undersigned counsel has independently reviewed and verified the authorities and record citations

contained herein and takes full responsibility for the contents of this filing. See N.D. Tex. L.R.

7.2(f).

i

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................3

I.  The Court Should Defer Ruling or Deny the Motion Without Prejudice Pending the
Federal Circuit Appeal ...............................................................................................3

II.  This Case Is Not Exceptional Under 35 U.S.C. § 285 ...................................................4

A.  Wolverine's Eligibility Position Was Objectively Reasonable ...............................4

B.  The Court Never Reached Infringement, and an Unadjudicated Defense Cannot
Support a Fee Award ..............................................................................................6

C.  Wolverine's Conduct of This Litigation Was Not Unreasonable, Much Less
Exceptional ............................................................................................................7

D.  Albertsons' "Pattern" Theory Fails for Want of Evidence ....................................9

III.  No Sanction Against Counsel Is Available or Warranted ............................................9

IV.  Inherent-Power Sanctions Require Clear and Convincing Evidence of Bad Faith That
This Record Cannot Supply .......................................................................................11

V.  In All Events, Albertsons' $350,000 "Estimate" Is Untethered to Any Identified
Misconduct................................................................................................................11

CONCLUSION....................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)....................................................................................5

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (en banc)..................................................................6, 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).....................................................................................................2

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)....................................................................................5

*Blackbird Tech LLC v. Health In Motion LLC*,
  944 F.3d 910 (Fed. Cir. 2019)...............................................................................7, 8, 9

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)....................................................................................3

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991).....................................................................................................11

*Crowe v. Smith*,
  151 F.3d 217 (5th Cir. 1998) .....................................................................................11

*Dragon Intell. Prop. LLC v. DISH Network L.L.C.*,
  101 F.4th 1366 (Fed. Cir. 2024) ...............................................................................2, 9

*Edwards v. Gen. Motors Corp.*,
  153 F.3d 242 (5th Cir. 1998) .....................................................................................10

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)....................................................................................8

*Fox v. Vice*,
  563 U.S. 826 (2011).....................................................................................................4

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004)..................................................................................6, 8

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017)....................................................................................................11

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017)....................................................................................5

*mCom IP, LLC v. City Nat'l Bank of Fla.*,
  175 F.4th 1370 (Fed. Cir. 2026) .................................................................................1

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,

837 F.3d 1299 (Fed. Cir. 2016)........................................................................5

*Munchkin, Inc. v. Luv n' Care, Ltd.*,
    960 F.3d 1373 (Fed. Cir. 2020)....................................................................4

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)............................................................................... 1, 4

*PowerBlock Holdings, Inc. v. iFit, Inc.*,
    146 F.4th 1366 (Fed. Cir. 2025) ..................................................................4, 5

*Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)................................................................................ 6, 8

*Procter & Gamble Co. v. Amway Corp.*,
    280 F.3d 519 (5th Cir. 2002) .....................................................................10

*PS Prods. Inc. v. Panther Trading Co.*,
    122 F.4th 893 (Fed. Cir. 2024) ...................................................................11

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015).................................................................4, 8, 9

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994).................................................................................8

**Statutes**

28 U.S.C. § 1927..................................................................................... 1, 3, 10, 11
35 U.S.C. § 101....................................................................................... 1, 3, 4
35 U.S.C. § 282..........................................................................................4
35 U.S.C. § 285..........................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................2, 10
Fed. R. Civ. P. 54 advisory committee's note (1993)....................................................3
Fed. R. Civ. P. 60(b) ..................................................................................8
Fed. R. Evid. 408 ......................................................................................9

Plaintiff Wolverine Barcode IP LLC ("Wolverine") responds in opposition to Defendant Albertsons Companies, Inc.'s Motion for Attorneys' Fees (Appx128-147).

## CERTIFICATION REGARDING GENERATIVE ARTIFICIAL INTELLIGENCE

Counsel for Plaintiff certifies that generative artificial intelligence was used to assist in preparing portions of this brief, and that a licensed attorney has personally reviewed and verified every citation, quotation, and statement of law and fact contained herein before filing.

## <u>INTRODUCTION</u>

Albertsons won a motion to dismiss. Under the American Rule, that is ordinarily the end of the matter. Section 285 reserves fee-shifting for the rare case that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). And less than three months ago, the Federal Circuit reversed a § 285 award and a § 1927 sanction entered on materially indistinguishable arguments, holding that "mere invalidity is not legally sufficient to find a case exceptional"—exceptionality on invalidity grounds requires "unusually or extraordinarily weak patent claims." *mCom IP, LLC v. City Nat'l Bank of Fla.*, 175 F.4th 1370, 1379 (Fed. Cir. 2026).

Measured against that standard, Albertsons' motion fails at every point. Its lead theory, that the complaint "admitted" noninfringement, rests on a defense this Court expressly declined to adjudicate. Its § 101 theory reduces to the proposition that losing an eligibility contest makes a case exceptional, an equation *mCom* forecloses and this Court's own opinion refutes: the Court rejected Albertsons' proposed statement of the claims' focus as one that "overgeneralizes and describes the claims at too high a level of abstraction," Appx118. before resolving eligibility in a careful twenty-page analysis. A question that takes twenty pages to answer is a contestable

1

question, not a frivolous one. And Albertsons' litigation-conduct narrative is stitched together from settlement communications and a raw count of other lawsuits, precisely the showing the Federal Circuit found insufficient in *mCom* for want of "evidence establishing [the] character" of that activity. 175 F.4th at 1380–81.

The requests aimed at Wolverine's counsel fare worse still. Liability for fees under § 285 "does not extend to counsel" at all. *Dragon Intell. Prop. LLC v. DISH Network L.L.C.*, 101 F.4th 1366, 1372 (Fed. Cir. 2024). Section 1927, strictly construed in this Circuit, punishes only the unreasonable and vexatious multiplication of proceedings, not the filing of a complaint, and not the litigation of a non-frivolous case to a ruling on a single Rule 12(b)(6) motion. And inherent-power sanctions require a specific finding of bad faith supported by clear and convincing evidence, a showing this record cannot bear. The motion should be denied.

## BACKGROUND

Wolverine owns U.S. Patent No. 9,280,689. Appx108. The Patent and Trademark Office issued the '689 patent on March 8, 2016, nearly two years after the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), following examination that post-dated *Alice* and the Office's ensuing eligibility guidance. Appx002 at ¶ 6; Appx009. Wolverine filed this action on June 6, 2025, attaching to its complaint a twenty-two-page, element-by-element claim chart mapping each limitation of claim 1 of the '689 patent to specific, publicly documented functionality of the Albertsons Cash payment service, drawn from Albertsons' own webpages, FAQ, and terms and conditions. f; Appx035-066; (Ramey Decl. ¶¶ 2–5).

Albertsons moved to dismiss on December 5, 2025, arguing ineligibility under § 101 and, in the alternative, that the complaint did not adequately plead direct or indirect infringement. Appx067-Appx075. Wolverine opposed, Appx076-Appx091, and Albertsons replied, Appx092-

Appx107. On July 9, 2026, the Court granted the motion solely on eligibility grounds. Appx108-Appx127. The Court began from the premise that issued patents "are presumptively valid," Appx111. (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019)), acknowledged that "[m]arking the line between patent-ineligible abstract ideas and patent-eligible processes invented using those ideas has proven to be a challenging task for courts," Appx113, and rejected both parties' proposed articulations of the claims' focus, including Albertsons', before adopting its own. Appx117-Appx118. Having found the claims ineligible, the Court did not reach Albertsons' infringement arguments, observing that an infringement determination following an ineligibility holding would "constitute[] an impermissible advisory opinion." Appx112.

Wolverine filed its notice of appeal to the United States Court of Appeals for the Federal Circuit on July 27, 2026, Appx153-154, and that appeal is pending. Albertsons filed the present motion on July 23, 2026, seeking an estimated $350,000 from Wolverine under 35 U.S.C. § 285 and from Wolverine's counsel personally under 28 U.S.C. § 1927 and the Court's inherent power. Appx128-Appx147, Appx146.

## ARGUMENT

### I.    THIS CASE IS NOT EXCEPTIONAL UNDER 35 U.S.C. § 285.

Albertsons bears the burden of establishing exceptionality by a preponderance of the evidence. *Octane*, 572 U.S. at 557–58. What matters is "the 'substantive strength of the party's litigating position' that is relevant . . . , not the correctness . . . of that position." *mCom*, 175 F.4th at 1379 (quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015)). None of Albertsons' four theories carries that burden, alone or together.

### A.  Wolverine's Eligibility Position Was Objectively Reasonable.

3

Albertsons contends Wolverine's § 101 arguments were "weak." Appx142. The Federal Circuit could not have been clearer that losing on invalidity, even losing decisively, does not make a case exceptional: "mere invalidity is not legally sufficient"; the claims must be "unusually or extraordinarily weak." *mCom*, 175 F.4th at 1379; *see also Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378–80 (Fed. Cir. 2020) (reversing fee award where the district court "never adequately explain[ed] why [the patentee's] validity position was unreasonable"). Wolverine was entitled to rely on the statutory presumption of validity, 35 U.S.C. § 282, a presumption with particular force here, where the Office examined and allowed the '689 patent's claims nearly two years after *Alice*. *See mCom*, 175 F.4th at 1379 (patentee entitled to rely on the presumption of validity in assessing its litigating position).

The Court's own opinion confirms the question was genuinely contestable. The Court acknowledged that drawing the line between abstract ideas and eligible applications "has proven to be a challenging task for courts." Appx113. It then rejected Albertsons' proposed step-one framing, "verifying a customer's ability to pay," because that framing "overgeneralizes and describes the claims at too high a level of abstraction," Appx118, the very analytical error the Federal Circuit warned against in *McRO* and corrected again in *PowerBlock*. *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (courts "must be careful to avoid oversimplifying the claims"); *PowerBlock*, 146 F.4th at 1373. A movant whose own articulation of the dispositive abstract idea did not survive the Court's scrutiny is poorly positioned to argue that no reasonable litigant could have contested eligibility at all.

Wolverine's step-two arguments, though unsuccessful, were of a recognized and legitimate kind. Wolverine pointed to specification-rooted improvements, automatic registration without entry of personal information, and improved security for a user's sensitive data, and argued that

4

the claims solved a problem arising in electronic commerce. Appx087-Appx088; Appx122-Appx126 (addressing those arguments on the merits). The Federal Circuit has repeatedly held that eligibility can turn on factual disputes about whether claim elements or their ordered combination were well-understood, routine, and conventional. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). And *PowerBlock*, decided while this case was pending, reversed a step-one dismissal on reasoning a patentee could fairly invoke here, including the instruction that courts may not read out claim limitations merely because they appear in the prior art, and the caution against conflating the §§ 102 and 103 inquiries with step one. 146 F.4th at 1373 & n.3. A doctrine in that state of active development leaves ample room for reasonable, losing arguments.

*Inventor Holdings*, on which Albertsons leans, Appx142, proves the point by contrast. There, the asserted patent issued before *Alice*, the claims were ineligible under a straightforward application of *Alice* itself, and the patentee pressed forward through years of merits litigation without reassessing its position after the law changed beneath it. *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377–79 (Fed. Cir. 2017). The '689 patent, by contrast, was allowed after *Alice*; Wolverine's positions were tested and resolved on a single Rule 12 motion; and the governing step-one law was, and remains, contested territory. Nothing about that sequence "stands out."

### B. The Court Never Reached Infringement, and an Unadjudicated Defense Cannot Support a Fee Award.

Albertsons devotes the largest share of its motion to the theory that the complaint was "objectively baseless" because Exhibit B assertedly shows divided infringement. Appx136-Appx138; Appx141-Appx142. The Court never decided that question. It resolved the motion

solely on eligibility and expressly noted that reaching infringement after an ineligibility holding would "constitute[] an impermissible advisory opinion." Appx112. *mCom* forecloses building an exceptionality finding on an unadjudicated defense: the Federal Circuit reversed the award there in part because the district court never found that the asserted licensure defense was in fact established, holding that "[t]he existence of a license covering the accused activities is a necessary predicate to a determination that the license made bringing or maintaining the suit unreasonable." 175 F.4th at 1380. So too here. Albertsons asks the Court to conduct, inside a fee motion, the merits adjudication it never obtained, and to charge Wolverine with the consequences of a ruling that was never made.

Nor was the infringement theory objectively baseless on its own terms. A lawsuit is objectively baseless only if "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993); *see Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1375–77 (Fed. Cir. 2004) (a patentee's assertions of infringement, including in pre-suit and settlement communications, cannot support liability or sanction unless objectively baseless). Under *Akamai*, the acts of a customer are attributable to the accused infringer where it "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc). Exhibit B alleges that Albertsons' own systems perform the great bulk of the claimed method, generating the personal code, converting it into a User ID Barcode, storing it, establishing the user account, detecting the barcode at the vendor server, comparing the purchase price against available funds, and transmitting the approval signal—and that the customer-facing steps occur entirely within Albertsons' app, under

Albertsons' terms and conditions, at Albertsons' registers, as a condition of receiving the Albertsons Cash benefit. Appx035-Appx066. Whether those allegations would ultimately have satisfied *Akamai* was never tested. That they presented a colorable conditioning theory is enough to defeat any charge of objective baselessness, and Wolverine's opposition preserved exactly that theory, arguing that Albertsons "controls all aspects of its infringing process." Appx089.

Albertsons also complains that Wolverine did not defend its indirect-infringement allegations in opposition. Appx138. Streamlining a brief to its strongest grounds is responsible advocacy, not an admission of bad faith. Courts encourage parties to narrow disputes; they do not sanction them for it.

## C. Wolverine's Conduct of This Litigation Was Not Unreasonable, Much Less Exceptional.

Stripped of its adjectives, Albertsons' "unreasonable conduct" narrative consists of three things: settlement offers, prematurely served discovery that Wolverine withdrew, and a post-judgment settlement proposal contemplating a joint request for vacatur. None is misconduct.

*Settlement offers.* Wolverine's October 2, 2025, letter proposed "an early-stage settlement of $149,000.00, before either party has incurred substantial expenses." Appx1398-147 at 6 (quoting Ex. 3). The offer did not escalate; it was not paired with threats; and it was made before the motion to dismiss was even filed.  (Ramey Decl. ¶¶ 7–9). The law encourages early resolution, and proposing to settle for less than the projected cost of defense is commonplace and rational for both sides. The authorities Albertsons cites involved far more. In *Blackbird*, the patentee made a series of steadily decreasing demands, delayed its discovery obligations, and then abandoned its claims with a covenant not to sue on the eve of judgment to escape an adverse ruling. *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916–17 (Fed. Cir. 2019). In *Eon-Net*, the district

court made findings of destroyed evidence, a Rule 11 violation, and offers dwarfed by defense costs across a hundred-suit campaign. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–28 (Fed. Cir. 2011). Nothing comparable exists here, and unlike the plaintiffs in those cases, Wolverine litigated this case to a merits judgment rather than fleeing one, conduct that directly contradicts the "shakedown" label. *Cf. SFA*, 793 F.3d at 1350 (pattern theory turns on filings made "with no intention of testing the merits").

*Discovery.* The December 2025 disclosures and discovery requests were served in anticipation of the case proceeding on a schedule, carried clerical captioning errors from prior templates, and were expressly withdrawn: "To the extent there are other discovery requests that have been made, those are withdrawn." Appx139 (quoting Ex. 15); (Ramey Decl. ¶¶ 10–13). Albertsons identifies no motion it was forced to file, no hearing it was forced to attend, and no expense beyond reading correspondence. Premature paper, promptly retracted and never enforced, is the ordinary friction of litigation, not vexatiousness.

*The vacatur proposal.* Albertsons' most heated rhetoric, "corrupt bargain," collusion, is aimed at a settlement proposal. After judgment, Wolverine proposed that the parties settle and jointly ask this Court to vacate its opinion; if the Court declined, Wolverine would simply proceed with its appeal. Appx140 (quoting Ex. 16). The Supreme Court has expressly recognized that district courts may entertain requests for vacatur in connection with settlement under Rule 60(b), weighing the equities and the public interest for themselves. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994). Proposing to invoke a procedure the law provides, one that leaves the decision entirely in this Court's hands, on a fully disclosed joint motion, is petitioning activity, not misconduct, and cannot be sanctioned absent objective baselessness. *See, e.g., Prof'l Real Estate*, 508 U.S. at 60; *Globetrotter*, 362 F.3d at 1375–77. Nothing was concealed and

8

nothing was corrupt: the Court would have received the motion, heard from both parties, and ruled as it saw fit. That Albertsons declined the proposal ends the matter; it does not transform an offer into an abuse. (Ramey Decl. ¶¶ 14–16).

*The remainder.* Albertsons' remaining complaints, that Wolverine completed service after a reminder from the Court and initially sought relief from Local Rule 83.10, describe early administrative wrinkles cured without motion practice or prejudice. One final observation: this motion is built, to a remarkable degree, on Federal Rule of Evidence 408 material. Settlement conduct is not categorically off-limits in the § 285 analysis, if both subjective and objective baselessness are shown (*See, e.g., Prof'l Real Estate*, 508 U.S. at 60; *Globetrotter*, 362 F.3d at 1375–77.), but a regime in which every early settlement offer becomes the centerpiece of a later sanctions motion would chill precisely the resolution efforts the Rules are designed to foster. The Court should decline the invitation.  Here, there was not a finding of subjective and objective baselessness.  Moreover, it is not the attorney that sets the amount for settling a case. It is the client. There are legitimate business reasons for a client to open with a low settlement offer, such as resolving the case without the expenditure of significant legal resources by either party.

### D.  Albertsons' "Pattern" Theory Fails for Want of Evidence.

Albertsons closes with a list of Wolverine's other cases and an invitation to infer a "pattern of abusive shakedown cases." Appx143-Appx144. *mCom* rejected the same move on the same kind of record. A fee movant pointing to other suits that settled or were voluntarily dismissed must supply "evidence establishing [the] character" of that activity, the values of the settlements, their relationship to any damages theory, the merits posture of the other cases. 175 F.4th at 1380–81. Albertsons supplies none of that. It offers a docket-counting exercise, which shows only that Wolverine, like any patentee, enforced its patent against multiple accused infringers, conduct the

9

Patent Act permits. And the details Albertsons does supply cut against it: by Albertsons' own account, Wolverine voluntarily dismissed nine cases before answer, stipulated to dismissal in four others, and litigated this one through a dispositive motion to judgment. Appx135-Appx136. A plaintiff bent on nuisance extraction does not brief a dispositive motion to decision and then appeal the result; it disappears before the ruling. *Cf. SFA*, 793 F.3d at 1350; *Blackbird*, 944 F.3d at 916–17.

## II.    NO SANCTION AGAINST COUNSEL IS AVAILABLE OR WARRANTED.

Begin where the Federal Circuit ended in *Dragon*: "liability for attorneys' fees awarded under § 285 does not extend to counsel." 101 F.4th at 1372. Whatever Albertsons might recover under § 285, and it should recover nothing, it may recover from Wolverine alone. Any award against Mr. Ramey or Ramey LLP personally must therefore satisfy § 1927 or the demanding standard governing the Court's inherent power. Neither is met.

In the Fifth Circuit, § 1927 is strictly construed and requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The statute punishes only the multiplication of proceedings: it authorizes shifting only fees associated with the persistent prosecution of a meritless claim. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26 (5th Cir. 2002). This case comprised a complaint, one opposition brief, and correspondence. Wolverine filed no motions, noticed no depositions, and sought no extensions. There is, quite literally, nothing that was multiplied.

*mCom* controls the remainder. There, as here, the district court sanctioned plaintiff's counsel for pressing a case the court later found meritless. The Federal Circuit reversed: absent a determination that the suit was frivolous, "it was not unreasonable for [counsel] to litigate the case

10

to a ruling on the Rule 12(b)(6) motion," and even a "lack of diligence does not rise to the level of needless obstruction." 175 F.4th at 1381. For the reasons set out in Part I, this suit was not frivolous: the patent carried a statutory presumption of validity reinforced by post-*Alice* allowance; the eligibility question required a twenty-page opinion to resolve; and the infringement theory was never adjudicated at all. Opposing one motion to dismiss and taking an appeal is the ordinary practice of law.

Albertsons' resort to sanctions orders entered against counsel in other, unrelated cases, Appx144-Appx145, is no substitute for evidence of sanctionable conduct in this one. Section 1927 liability attaches to conduct in the case at bar, and each proceeding rises or falls on its own record. Indeed, the Federal Circuit's most recent word on this counsel's conduct is *mCom* itself, which reversed both a fee award and a § 1927 sanction because the record did not support them. 175 F.4th at 1379–82.

## III. INHERENT-POWER SANCTIONS REQUIRE CLEAR AND CONVINCING EVIDENCE OF BAD FAITH THAT THIS RECORD CANNOT SUPPLY.

The inherent power "must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), and when statutes and rules address the conduct at issue, a court ordinarily should rely on those provisions rather than the inherent power, *id.* at 50. In this Circuit, inherent-power sanctions require a specific finding of bad faith supported by clear and convincing evidence. *Crowe v. Smith*, 151 F.3d 217, 238-239 (5th Cir. 1998). Albertsons' inherent-power section simply recycles its § 285 and § 1927 arguments, Appx145-AQppx146, arguments that fail even under those provisions' less demanding standards. *PS Products* does not help Albertsons: there, the Federal Circuit affirmed inherent-power sanctions resting on express district-court findings of bad faith, grounded in a complaint that stated no plausible claim and a

11

documented history of meritless filings in the same district. *PS Prods. Inc. v. Panther Trading Co.*, 122 F.4th 893, 898 (Fed. Cir. 2024). No comparable findings could be made here, where eligibility was reasonably contested, infringement was never decided, and Wolverine's conduct consisted of ordinary motion practice and settlement correspondence.

## IV.    IN ALL EVENTS, ALBERTSONS' $350,000 "ESTIMATE" IS UNTETHERED TO ANY IDENTIFIED MISCONDUCT.

Fee awards, whether under § 285, § 1927, or the inherent power, are compensatory, not punitive, and must be limited to fees the challenged conduct caused. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017); *see* 28 U.S.C. § 1927 (limiting recovery to "excess costs" and fees "reasonably incurred because of such conduct"). Albertsons litigated this case through a single Rule 12 briefing cycle: no discovery, no claim construction, no scheduling conference, no hearing. A $350,000 estimate for that work is extraordinary on its face, and Albertsons makes no attempt to connect any portion of it to any specific conduct it challenges. Should the Court reach the question of amount notwithstanding all of the foregoing, Wolverine respectfully requests the opportunity to examine and brief objections to Albertsons' billing records, rates, and allocation before any sum is fixed, including deciphering what portion of the fees were incurred under the merits analysis of the case as compared to the fee motion itself.

## CONCLUSION

For these reasons, Wolverine respectfully requests that the Court deny Defendant's Motion for Attorneys' Fees (ECF No. 34) in its entirety and grant Wolverine all other relief to which it is entitled.

Respectfully submitted,

**Kirby Drake Law PLLC**

12

*/s/ Kirby Drake*
Kirby Drake
Texas State Bar No. 24036502
kirby@kirbydrakelaw.com
2550 Pacific Avenue, Suite 700
Dallas, TX 75226
972.635.0533 (telephone)

**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)

***Attorneys for Wolverine Barcode IP LLC***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 5, 2026, a true and correct copy of the foregoing was served

on all counsel of record via the Court's electronic filing system.

*/s/ William P. Ramey, III*
William P. Ramey, III

13