**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| WOLVERINE BARCODE IP LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:25-CV-01448-B |
| ALBERTSONS COMPANIES, INC., | § | |
| | § | |
| Defendant. | § | |

### DECLARATION OF WILLIAM P. RAMEY, III IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES

I, William P. Ramey, III, declare as follows:

1.  I am the managing partner of Ramey LLP and counsel of record for Plaintiff Wolverine Barcode IP LLC ("Wolverine") in this action. I am a member in good standing of the State Bar of Texas (Bar No. 24027643) and am admitted to practice before this Court. I make this declaration based on my personal knowledge, and if called upon to testify, I could and would testify competently to the matters stated herein.

2.  Before Wolverine filed its complaint on June 6, 2025, I and attorneys working under my direction conducted a pre-suit investigation that included review of U.S. Patent No. 9,280,689 (the "'689 patent"), its claims and specification, its prosecution history, and publicly available documentation describing the Albertsons Cash and DirectPay payment services, including Albertsons' own webpages, frequently-asked-questions pages, and published terms and conditions.

3. That investigation produced the element-by-element claim chart attached to the complaint as Exhibit B (Doc. 1-2), which maps each limitation of claim 1 of the '689 patent to specific, publicly documented functionality of the Albertsons Cash service, with source URLs identified for each element.

4. The '689 patent issued on March 8, 2016, following examination by the U.S. Patent and Trademark Office that post-dated the Supreme Court's June 2014 decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*. At the time the complaint was filed, no court or administrative tribunal had held any claim of the '689 patent invalid, unenforceable, or ineligible.

5. Wolverine filed this action in good faith, believing, based on the pre-suit investigation described above and the statutory presumption of validity, that it had meritorious claims of infringement against Albertsons.

6. Wolverine and Ramey LLP did not file this action, and have not filed any action, for the purpose of extracting a settlement untethered to the merits of the claims asserted.

7. On October 2, 2025, before Defendant filed its motion to dismiss, Wolverine sent Albertsons a letter proposing an early-stage settlement of $149,000, for the stated purpose of resolving the case before either party incurred substantial expense.

8. Wolverine's subsequent settlement communications maintained that same $149,000 figure. Wolverine's settlement communications did not escalate its demand over the course of the litigation, and were made in a good-faith effort to resolve the dispute.

9. All of Wolverine's settlement communications with Albertsons were made in the course of compromise negotiations within the meaning of Federal Rule of Evidence 408.

10. On December 17, 2025, and December 30, 2025, my office served preliminary infringement contentions, initial disclosures, and written discovery requests on counsel for Albertsons in anticipation of the case proceeding to a scheduling order.

11. The references to "AML IP, LLC" and to "Sephora USA, Inc." appearing in two of the December 30, 2025 documents were clerical errors resulting from the use of document templates from other matters. Those errors were inadvertent.

12. After receiving Albertsons' January 28, 2026 letter taking the position that discovery had not commenced, Wolverine took no step to enforce or compel responses to the December 2025 requests. By email dated June 18, 2026, my office expressly withdrew all previously served discovery requests, stating: "To the extent there are other discovery requests that have been made, those are withdrawn."

13. No motion practice, hearing, or court intervention of any kind resulted from the December 2025 or June 2026 service of disclosures or discovery requests.

14. On July 10, 2026, the day after the Court entered its Memorandum Opinion and Order (Doc. 31), I proposed to counsel for Albertsons, on Wolverine's behalf, a settlement under which the parties would resolve the case and jointly request that the Court vacate its opinion; the proposal stated that if the Court declined vacatur, Wolverine would proceed with its appeal. I renewed that proposal on July 11, 2026.

15. When I made that proposal, I understood, and understand now, that vacatur of a district court's judgment or opinion in connection with settlement is relief committed to the Court's discretion, to be sought by motion on full disclosure to the Court, which remains free to grant or deny it. The purpose of the proposal was to resolve the parties' dispute, not to conceal anything from the Court or to circumvent its ruling.

16. Albertsons did not accept the proposal, and Wolverine has proceeded with its appeal.

17. On July 27, 2026, Wolverine filed its notice of appeal from the Court's judgment (Doc. 37). The appeal is pending before the United States Court of Appeals for the Federal Circuit.

18. Wolverine litigated this case to a ruling on Defendant's motion to dismiss and is pursuing appellate review of the Court's eligibility determination, conduct reflecting Wolverine's intention to test the merits of its claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 6, 2026, in Houston, Texas.

*/s/ William P. Ramey, III*
William P. Ramey, III