# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

WOLVERINE BARCODE IP LLC,

        Plaintiff,

v.

ALBERTSONS COMPANIES, INC.,

        Defendant.

Civil Action No. 3:25-CV-01448-B

## DEFENDANT ALBERTSONS COMPANIES, INC.'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

A.   The '689 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

B.   Plaintiff's Litigation Campaign . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   The '689 Patent Claims Patent-Ineligible Subject Matter Under 35 U.S.C. § 101 . . . . . . 4

A.   *Alice* Step One:  The '689 Patent Claim is Directed to an Abstract Idea . . . . . . . . 5

B.   *Alice* Step Two:  The '689 Patent Claim Does Not Recite
Any Inventive Concept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   The Complaint Admits That Albertsons Does Not Infringe the Patent . . . . . . . . . . . . . . 9

III.   The Complaint Fails to Allege Indirect Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . .12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Appx058

## TABLE OF AUTHORITIES

*Cases*                                                                                                          *Page*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 7

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

*Alice Corp. Pty v. CLS Bank Int'l*,
    573 U.S. 208 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12-13

*AuthWallet, LLC v. Block, Inc.*,
    602 F. Supp. 3d 620 (S.D.N.Y. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re AuthWallet, LLC*,
    No. 22-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023) . . . . . . . . . . . . . . . . . . . . . 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*David Austin Roses Ltd. v. GCM Ranch LLC*,
    764 F. Supp. 3d 474 (N.D. Tex. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appx059

**TABLE OF AUTHORITIES**
*(continued)*

*Page*

*De La Vega v. Microsoft Corp.,*
    No. 19-612, 2020 WL 3528411 (W.D. Tex. Dec. 8, Feb. 11, 2020) . . . . . . . . . . . . . . . . .11

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Fujitsu Ltd. v. Netgear Inc.,*
    620 F.3d 1321 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Internet Pats. Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*
    869 F.3d 1372 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Lyda v. CBS Corp.,*
    838 F.3d 1331 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,*
    566 U.S. 66 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mobile Acuity Ltd. v. Blippar Ltd.,*
    110 F.4th 1280 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mullen Indus. LLC v. Samsung Elecs. Co.,*
    No. 24-49, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024) . . . . . . . . . . . . . . . . . . . . . . 11

*Nalco Co. v. Chem-Mod, LLC,*
    883 F.3d 1337 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*NetSoc, LLC v. Match Grp., LLC,*
    No. 18-1908, 2019 WL 3304704 (N.D. Tex. July 22, 2019) . . . . . . . . . . . . . . . . . . . . .5

*PerformancePartners LLC v. NextGen Parking LLC,*
    No. 23-564, 2024 WL 1317800 (N.D. Tex. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*RecogniCorp, LLC v. Nintendo Co.,*
    855 F.3d 1322 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
    873 F.3d 905 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Solutran, Inc. v. Elavon, Inc.,*
    931 F.3d 1161 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Appx060

**TABLE OF AUTHORITIES**
*(continued)*

*Page*

*Ultramercial, Inc. v. Hulu, LLC,*
　　772 F.3d 709 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Universal Secure Registry LLC v. Apple Inc.,*
　　10 F.4th 1342 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wyeth v. Stone,*
　　30 F. Cas. 723 (C.C.D. Mass. 1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*W. Express Bancshares, LLC v. Green Dot Corp.,*
　　816 Fed. App'x 485 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Statutes*

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5

35 U.S.C. § 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 11

*Rules*

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Other Authorities*

*Wolverine Barcode IP LLC v. Albertsons Cos., Inc.,*
　　No. 25-1448 (N.D. Tex. June 6, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Amazon.com Services LLC,*
　　No. 25-330 (W.D. Tex. July 30, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Best Buy Co., Inc.,*
　　No. 25-331 (W.D. Tex. July 30, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Costco Wholesale Corp.,*
　　No. 24-307 (W.D. Tex. Nov. 27, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Wolverine Barcode IP LLC v. CVS Pharmacy, Inc.,*
　　No. 24-308, (W.D. Tex. Nov. 27, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Dunkin' Brands, Inc.,*
　　No. 25-334 (W.D. Tex. July 31, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Macy's Inc.,*
　　No. 25-404 (W.D. Tex. Sept. 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Appx061

# TABLE OF AUTHORITIES
*(continued)*

<em>Page</em>

*Wolverine Barcode IP LLC v. McDonald's Corp.*,
   No. 25-316 (W.D. Tex. July 17, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Paysafecard.com USA Inc.*,
   No. 25-405 (W.D. Tex. Sept. 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Shell Info. Tech. Int'l BV*,
   No. 25-4944 (S.D. Tex. Oct. 16, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Wolverine Barcode IP LLC v. The Kroger Co.*,
   No. 25-401 (W.D. Tex. Sept. 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolverine Barcode IP LLC v. Starbucks Co.*,
   No. 25-1058 (E.D. Tex. Oct. 22, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Wolverine Barcode IP LLC v. 7-Eleven*,
   No. 25-108 (N.D. Tex. Oct. 22, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appx062

**INTRODUCTION**

The Court should dismiss Wolverine Barcode's complaint.  Part of a broad litigation campaign asserting a single patent, the tepidly pleaded complaint seeks to extract a nuisance-value settlement rather than stand up to scrutiny.  It does not stand up to scrutiny.

As an initial matter, the single asserted patent does not claim patentable subject matter, but seeks to monopolize the age-old business practice of verifying customers' ability to pay.  The patent tries to dress up its claim by noting that it uses generic computer components, but patentees may not claim abstract ideas by adding, 'but do it on a computer.'  Stripped of jargon, the patent claims only verifying customers' ability to pay, which shopkeepers have done for millennia.  Plaintiff cannot assert claims under this patent.

Even assuming the patent makes valid claims, the complaint admits that Albertsons cannot infringe any claim.  The patent includes only method claims, so to allege infringement plaintiff must claim that Albertsons practices every element of the method.  But the complaint instead admits that Albertsons does not and cannot practice the patent's method claims, because elements of those claims require actions by an Albertsons customer.  This admission is fatal.  Finally, the complaint's boilerplate allegations of indirect infringement do not allege any supporting facts.  These allegations fail as well.

Plaintiff brings unpatentable claims, admits that Albertsons cannot infringe those claims, and fails to plead any other claim for relief.  The Court should dismiss plaintiff's complaint.

**BACKGROUND**

**A.      The '689 Patent**

The complaint asserts a single patent, U.S. Patent No. 9,280,689 entitled "Methods and Apparatus for Doing Offline Commerce Transactions."  Compl. ¶ 6, Ex. A.  The patent "relates to

– 1 –

methods and apparatus for conducting offline commerce transactions." '698 patent at 1:17-18. The patent explains that, as of its filing in 2011, customers "currently pay for goods priced in micro payment levels, such as five cents or ten cents using cash. Such payments are not made with credit cards because the cost of the credit card transaction processing is too high, making it impractical both for vendors and credit card companies to accept the use of a credit card for micro payment purchases." *Id.* at 1:26-31. The patent claims to "introduce[] a new method for identifying a user using the User ID Barcode" which, "being captured by the cashier using the scanner available at the cash register, provides fast checkout and with limited cost to the vendor for the transaction processing." *Id.* at 2:34-35, 7:1-3. The patent includes three claims, independent claim 1 and dependent claims 2 and 3. Independent claim 1 reads:

> A method for conducting offline electronic transactions having a vendor barcode scanner and a vendor cash register comprising:
>
> (a)     providing a personal code to a person for their use to purchase goods;
>
> (b)     converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;
>
> (c)     storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;
>
> (d)     establishing a User Account in a User Vendor Management Server corresponding to said personal code;
>
> (e)     depositing funds in said User Account to establish a credit limit;
>
> (f)     conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode
>
> (g)     detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Management Server;
>
> (h)     comparing the purchase price with the funds in said User Vendor Management Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;

Appx064

(i)    forwarding the approval signal to the vendor cash register; and

(i)[sic] repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

*Id.* at 17:31 to 18:31.

## B.    Plaintiff's Litigation Campaign

On March 8, 2016, the Patent and Trademark Office issued the '689 patent. *See* Compl. Ex. A at 1. On October 26, 2024, plaintiff Wolverine Barcode IP LLC incorporated as a Texas limited liability company. Declaration of Matthew S. Warren, Ex. A. *See* Appendix at Appx001 and Appx002-Appx003. Just a few weeks later, on November 11, 2024, plaintiff acquired the '689 patent. *See id.* at Appx001 and Appx004-Appx006. Just a few weeks after that, on November 27, 2024, plaintiff filed two infringement cases. *Wolverine Barcode IP LLC v. Costco Wholesale Corp.*, No. 24-307 (W.D. Tex.); *Wolverine Barcode IP LLC v. CVS Pharmacy, Inc.*, No. 24-308 (W.D. Tex.). Plaintiff never effected service of its complaint against CVS, and the court dismissed that action for lack of prosecution. *Wolverine v. CVS*, Docket No. 10 (W.D. Tex. Apr. 8, 2025). Costco answered plaintiff's complaint and counterclaimed, and the parties eventually stipulated to dismissal of plaintiff's claims with prejudice, and Costco's counterclaims without prejudice. *Wolverine v. Costco*, Docket No. 20 (W.D. Tex. Sept. 16, 2025).

Starting in June of this year, plaintiff filed eleven more complaints against defendants including Albertsons Companies, Inc.[1] None have progressed past the pleading stage. *See id.*

---

[1] *Wolverine Barcode IP LLC v. Albertsons Cos., Inc.*, No. 25-1448 (N.D. Tex. June 6, 2025); *Wolverine Barcode IP LLC v. McDonald's Corp.*, No. 25-316 (W.D. Tex. July 17, 2025); *Wolverine Barcode IP LLC v. Amazon.com Servs. LLC*, No. 25-330 (W.D. Tex. July 30, 2025); *Wolverine Barcode IP LLC v. Best Buy Co., Inc.*, No. 25-331 (W.D. Tex. July 30, 2025); *Wolverine Barcode IP LLC v. Dunkin' Brands, Inc.*, No. 25-334 (W.D. Tex. July 31, 2025); *Wolverine Barcode IP LLC v. The Kroger Co.*, No. 25-401 (W.D. Tex. Sept. 4, 2025); *Wolverine Barcode IP LLC v. Macy's Inc.*, No. 25-404 (W.D. Tex. Sept. 4, 2025); *Wolverine Barcode IP LLC v. Paysafecard.com USA Inc.*, No. 25-405 (W.D. Tex. Sept. 4, 2025); *Wolverine Barcode IP LLC v. Shell Info. Tech. Int'l BV*, No. 25-4944 (S.D. Tex. Oct. 16, 2025); *Wolverine Barcode IP*

– 3 –

Appx065

## ARGUMENT

### I.    The '689 Patent Claims Patent-Ineligible Subject Matter Under 35 U.S.C. § 101

"Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for 'failure to state a claim upon which relief can be granted.'" *David Austin Roses Ltd. v. GCM Ranch LLC*, 764 F. Supp. 3d 474, 478 (N.D. Tex. 2025) (quoting Fed. R. Civ. P. 12(b)(6)). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a "plausible claim" for patent infringement, a plaintiff "must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). "Issues of patent-eligible subject matter are questions of law," *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011), and so "[d]etermining patent eligibility under § 101 is appropriate at the pleadings stage." *PerformancePartners LLC v. NextGen Parking LLC*, No. 23-564, 2024 WL 1317800, at * 3 (N.D. Tex. 2024) (quoting *CyberSource*, 654 F.3d at 1369).

Patents may not claim "nature, natural phenomena, and abstract ideas"; they may only claim "patent-eligible applications of those concepts." *Alice Corp. Pty v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). In *Alice*, the Supreme Court established a two-part "framework for distinguishing" whether a patent's claimed subject matter is eligible for patenting. *Id.* "First the Court must determine whether the claims are directed to one of the three patent ineligible

---

*LLC v. Starbucks Co.,* No. 25-1058 (E.D. Tex. Oct. 22, 2025); *Wolverine Barcode IP LLC v. 7-Eleven,* No. 25-108 (N.D. Tex. Oct. 22, 2025).

Appx066

concepts under section 101:  laws of nature, natural phenomena, or abstract ideas." *NetSoc, LLC v. Match Grp., LLC*, No. 18-1908, 2019 WL 3304704, at *2 (N.D. Tex. July 22, 2019) (citing *Alice*, 573 U.S. at 208).  If the answer to this question—generally called '*Alice* step one'—is yes, in '*Alice* step two' the court proceeds to "'consider the elements of each claim both individually' and 'as an ordered combination' to determine whether additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id.* (quoting *Alice*, 573 U.S. at 208).  The '689 patent in this action includes only three claims; all fail both steps of the *Alice* test.

### A.    *Alice* Step One:  The '689 Patent Claim is Directed to an Abstract Idea

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  "The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).  The '689 patent fails this test.

The patent states that the "cost of the credit card transaction processing is too high" for "micro payment purchases," ('689 patent at 1:28-31), and the "focus of the claimed advance over the prior art" (*Affinity Labs*, *supra*) is "a new method for identifying a user using the User ID Barcode, allowing the user to charge purchasing of goods" without using a credit card.  '689 patent at 2:34-36.  To "identify[] a user using the User ID Barcode," the "cashier captures the User ID Barcode using the barcode scanner available with the cash register," and uses that "User ID Barcode" to communicate with a "User Vendor Management Server (UVM)," which "processes all purchasing transactions between the user and the vendor," including tracking "the available credit limit of the user's UVM account."  *Id*. at 2:34-35, 2:55-57, 2:63, 3:32-34,

3:56-57.  In other words:  the customer scans a barcode at the register, the register checks with a server, and the server tells the register whether the customer can pay for the transaction.

That is nothing more than verifying a customer's ability to pay, and that is an abstract idea.  Shopkeepers have done this since the Romans, only opening the cabinet with the good scarves for a customer who can buy them.  Fast-food restaurants hand over food only to customers that can pay.  And real-estate agents tour high-end houses only after confirming that clients are really in the market.  Everyone in business is constantly verifying customers' ability to pay.  Although the patent gestures toward various technical solutions for its method, it does not limit itself to any of them.  Instead, the patent repeatedly notes that any technical solution is equally acceptable.  The "User ID Barcode" can be any "unique number such as the cell phone number or the credit card number prefixed with a special character like '?'" and does not even have to be a barcode, since "capturing of the user identification number may be accomplished by using other techniques such as RFID or NFC instead of the barcode scanner."  *Id*. at 2:39-40, 6:29-31.  Similarly, the "UVM Server" must include only a "processor" and "memory" that holds a "User Database" and a "Product database" and information in those databases—a classic generic computer storing only the same information shopkeepers have always kept.  *Id*. at 12:32-35.  The specification thus confirms that the patent has claims only for "an art or principle in the abstract, and not for any particular method or machinery."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (quoting *Wyeth v. Stone*, 30 F. Cas. 723, 727 (C.C.D. Mass. 1840)).  The '689 patent fails the first step of the *Alice* analysis.

**B.      *Alice* Step Two:  The Claims Do Not Recite Any Inventive Concept**

If the Court determines that the claims at issue are directed to a patent-ineligible concept, the second step of the *Alice* inquiry asks the court to "determine whether the claims do

significantly more than simply describe [an] abstract method." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77 (2012)). "The 'inventive concept' step requires us to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed." *Affinity Labs*, 838 F.3d at 1258 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). To meet this requirement, a claim needs "an inventive concept in the non-abstract application realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018). Courts "examine the limitations of the claims to determine whether the claims contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 715 (quoting *Alice*, 573 U.S. at 221). In the '689 patent, the claims disclose only "generalized software components arranged to implement an abstract concept on a computer," which cannot supply the required inventive concept. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-35 (Fed. Cir. 2013).

Element (a) discloses "providing a personal code to a person for their use to purchase goods," thus providing only the abstract concept of a unique identifier, which cannot be an inventive concept. *See, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (affirming dismissal under *Alice* despite patentee's argument that claims were "specifically directed to a sender-generated unique identifier, which improved on the existing process both by reliably identifying the sender"). Element (b) discloses "converting said personal code into barcode format," but that too does not help, as it is "not limited to any particular technology of generating, printing, or scanning a barcode," but instead "is directed to the abstract process of communicating information" about a person. *Secured Mail*, 873 F.3d at

Appx069

911; *see, e.g.*, *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (affirming dismissal under *Alice* of patent claiming the "abstract idea of encoding and decoding image data"). Element (c) discloses "storing said personal code . . . in a User Vendor Management Server," which also cannot be an inventive concept, as it is merely the "basic concept of data recognition and storage." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (affirming dismissal under *Alice*).

Element (d) discloses "establishing a User Account in a User Vendor Management Server corresponding to said personal code," but "verifying the identity of a user to facilitate an economic transaction, for which computers are merely used in a conventional way" is an abstract idea. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021) (affirming dismissal under *Alice*). "Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis." *Ultramercial*, 772 F.3d at 717. Elements (e)-(i) address processing of a purchase, including "depositing funds," "conducting purchases," and "comparing the purchase price with the funds" available to the user. "This sales transaction activity speaks to the abstract concepts of an intermediary managing and authenticating a transaction between a consumer and a retailer," an abstract idea. *AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620, 632 (S.D.N.Y. 2022) (dismissing under *Alice*), *aff'd sub nom. In re AuthWallet, LLC*, No. 22-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023); *see e.g.*, *W. Express Bancshares, LLC v. Green Dot Corp.*, 816 F. App'x 485, 486 (Fed. Cir. 2020) (affirming dismissal under *Alice* where claims for "a 'method of funds transfer' using a payment card" claimed an abstract idea).

Claim 1 of the '689 patent "simply instruct[s] the practitioner to implement the abstract idea with routine, conventional activity." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169

– 8 –

(Fed. Cir. 2019) (quoting *Ultramercial*, 772 F.3d at 715). And dependent claims 2 and 3 add only further abstractions. Claim 2 adds storage of "said User ID Barcode is stored by said person in a cell phone," and claim 3 adds storage of the barcode "on a label secured to a credit card or secured to a user's cell phone." Whether using a mobile device or a simple sticker, these claims add only the "basic concept of data recognition and storage." *Content Extraction*, 776 F.3d at 1347. All relevant claims are thus "'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). The '689 patent fails the *Alice* test, and the Court should dismiss the complaint.

## II.    The Complaint Admits That Albertsons Does Not Infringe the Patent

Even assuming the patent claims eligible subject matter, the Court should still dismiss this action, because plaintiff admits in the complaint that Albertsons does not infringe the '689 patent. The patent includes only method claims, for which "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). The complaint confirms that no "single entity" does or can practice "all steps of a claimed method," and thus admits that Albertsons cannot infringe the claim. *Id.* The complaint itself does not specify which claims it asserts, alleging that Albertsons "infringes one or more of claims 1-3 of the '689 patent." Compl. ¶ 8. But the complaint puts its "[s]upport for the allegations of infringement" in "the chart attached as Exhibit B" (Compl. ¶ 9), and plaintiff's allegations in that chart (Compl. Ex. B, Docket No. 1-2) address only independent claim 1. *See generally id.* Plaintiff's chart showing its infringement allegations confirms that plaintiff cannot state a claim for infringement of independent claim 1, because it confirms that no claim can be "performed by

or attributable to a single entity." *Akamai*, 797 F.3d at 1022.  Since dependent claims 2 and 3 incorporate claim 1 and its elements, the same is necessarily true for them.

Plaintiff's claim chart confirms that its "claimed method" must be "performed by" two different entities:  Albertsons and an Albertsons retail customer.  *Akamai*, 797 F.3d at 1022. Plaintiff alleges, for example, that Albertsons practices element (b), which claims "converting said personal code into barcode format to form a User ID Barcode . . ." by alleging that "Albertsons Cash takes the internal authorization token . . . and converts it into a barcode." Compl. Ex. B at 5.  Similarly, plaintiff alleges that Albertsons practices element (d), "establishing a User Account in a User Vendor Management Server corresponding to said personal code," by claiming that "Albertsons Cash:  1. Establishes a digital user account that is linked to your one-time 3PL authorization token . . . 2. Collects and stores your personal details and purchase history under that account whenever you use the service to buy items." *Id.* at 9-10.  But plaintiff *also* alleges that an Albertsons *customer* practices element (e), "depositing funds in said User Account to establish a credit limit," stating that "Albertsons Cash lets you deposit funds into your in-app account so that you can earn or redeem cash back rewards when you check out." *Id.* at 11. Plaintiff itself thus admits that its allegations require Albertsons to practice some elements of the asserted method, and the customer to practice other elements.

In addition, plaintiff alleges that for some elements, both Albertsons *and* its customer practice portions of the method.  For element (a), "providing a personal code to a person for their use to purchase goods," plaintiff alleges that "when a customer opens the Albertsons app and chooses Albertsons Cash, the system generates a one-time 3PL code."  Compl. Ex. B at 4-5.  But, immediately following, plaintiff further alleges that "The customer then scans that code at checkout to pay directly from their Albertsons Cash balance." *Id.* at 5.  Similarly, for element (f),

– 10 –

"conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode," plaintiff alleges that the user does the purchasing and scanning, but the "checkout system sends both the product barcodes and your User ID barcode back to Albertsons' records." *Id.* at 11-12. Plaintiff thus claims that, for various elements of the asserted method, the allegedly infringing party is either Albertsons, the customer, or sometimes both. The complaint admits that not "all steps of a claimed method are performed by or attributable to a single entity," and there can be no "[d]irect infringement under § 271(a)" of the asserted method claim. *Akamai*, 797 F.3d at 1022.[2]

When a complaint admits that no single actor infringes a method claim, courts routinely dismiss at the pleading stage. *See, e.g.*, *Lyda*, 838 F.3d at 1340 (affirming dismissal at the pleading stage); *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 24-49, 2024 WL 4870768, at *3 (E.D. Tex. Nov. 21, 2024) (dismissing at the pleading stage where "the Complaint does not plausibly plead a claim for divided infringement" and "fails to allege the existence of a joint enterprise"); *De La Vega v. Microsoft Corp.*, No. 19-612, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (dismissing at the pleading stage where "[d]espite apparently relying on the acts of multiple entities as allegedly performing the steps of the claimed method (and for some no actor is identified), the Complaint alleges no facts to support a claim for joint infringement"). Just as in those cases, plaintiff's complaint here admits that its "claimed method" must be

---

[2] The complaint does not try to claim joint infringement. "To prove joint infringement, where multiple actors are involved in practicing the claim steps, the patent owner must show that the acts of one party are attributable to the other such that a single entity is responsible for the infringement." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016). Joint infringement applies "in two circumstances: '(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.'" *Lyda*, 838 F.3d at 1339 (quoting *Akamai*, 797 F.3d at 1022). Plaintiff does not claim either, and nor could it, as Albertsons does not "direct[] or control[]" its customers' shopping and they do not form a "joint enterprise." *Id.*

– 11 –

"performed by" two different entities:  Albertsons and an Albertsons retail customer.  *Akamai*, 797 F.3d at 1022.  Just as in those cases, the Court should dismiss plaintiff's complaint.

### III.    The Complaint Fails to Allege Indirect Infringement

Although the complaint briefly mentions indirect infringement, *see id.* ¶¶ 10-11, these claims fail for two reasons.  First, "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012).  Plaintiff admits there is no direct infringement, *supra* § II, and so plaintiff cannot allege indirect infringement.  Second, even if the Court assumes allegations of direct infringement, plaintiff still fails to plead indirect infringement, as it provides no plausibly asserted facts to support those claims.

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (alteration in original) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)).  Plaintiff pleads no facts to support any of these elements, submitting only a single boilerplate paragraph, Compl. ¶ 10.  Similarly, "to establish contributory infringement," a complaint must plead "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  Again, plaintiff pleads no facts to support any of these elements, and submits only a single boilerplate paragraph, Compl. ¶ 11.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

Appx074

*Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "'further factual enhancement."" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557)).  That is all these paragraphs offer, and they thus fail to allege indirect infringement.  The Court should dismiss for this reason as well.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Wolverine Barcode's complaint.

Date: December 5, 2025

Respectfully submitted,

*/s/ Sarah E. Spires*
Sarah E. Spires (Texas Bar No. 24083860)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
sspires@skiermontderby.com

Matthew S. Warren (California Bar No. 230565)
(admitted *pro hac vice*)
Jessica Lord (California Bar No. 359585)
(admitted *pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street No. 606,
San Francisco, California 94114
Telephone: (415) 895-2940
Fax:  (415) 895-2964
25-1448@cases.warrenlex.com

*Attorneys for Defendant*
*Albertsons Companies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Sarah E. Spires*

– 13 –

Appx075