

June 19, 2026


Sarah E. Spires
Skiermont Derby LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201


**VIA EMAIL**


**CONFIDENTIAL — FOR SETTLEMENT PURPOSES ONLY —
INADMISSIBLE UNDER FED. R. EVID. 408**


**Re:** *Wolverine Barcode IP, LLC v. Albertsons Companies, Inc.*, No. [CASE NO.]
(N.D. Tex. [Division]); U.S. Patent No. 9,280,689 — Settlement Demand


Dear Sarah:


As we have discussed, we represent Wolverine Barcode IP, LLC ("Wolverine") in the
above-referenced action. This letter responds to the parties' obligation to explore
resolution and sets out Wolverine's settlement position, supported by a worked royalty
calculation your client and its experts can independently replicate. It is a confidential
settlement communication under Federal Rule of Evidence 408 and is offered solely to
compromise a disputed claim.

**The patent and the accused functionality**

U.S. Patent No. 9,280,689 (the "'689 patent"), titled "Method and Apparatus for
Conducting Offline Commerce Transactions," issued March 8, 2016 to inventor Marvin
T. Ling and is owned by Wolverine. Claim 1 — the independent method claim charted in
Wolverine's infringement contentions — recites a method for conducting commerce
transactions in which a personal code is converted into a "User ID Barcode" carrying a
special character that distinguishes it from a product barcode; the barcode is stored by the
user and at a User Vendor Management Server; funds or a credit limit are established in
the user's account; and, at checkout, the cash register scans the product barcodes together

---

with the User ID Barcode, the server compares the purchase price against available funds, and an approval signal is returned to the register to complete the sale.

The accused instrumentality is Albertsons' in-app barcode payment functionality — marketed as **Albertsons Pay**, **Albertsons Cash**, and **DirectPay** within the Albertsons "for U" (formerly "just for U") mobile application. Albertsons introduced this contactless, QR-code checkout in all of its stores on October 19, 2020. As Albertsons' own customer-facing materials describe it, the app issues a one-time tokenized code (prefixed "3PL:"), renders it as a scannable barcode shown at checkout, links it to a user account that the customer pre-loads or funds through a linked bank, and, upon scanning at the register, compares the purchase against available funds and applies payment. Wolverine's contention chart maps each element of claim 1 to that functionality.

The '689 patent does not expire until 2031. The accused conduct began in October 2020 and falls entirely within the six-year damages window of 35 U.S.C. § 286. A reasonable royalty under § 284 is therefore available for the full accused period, and a forward license carries independent value.

**Reasonable-royalty framework**

Damages would be measured as a reasonable royalty determined through a hypothetical arm's-length negotiation between Wolverine and Albertsons on the eve of first infringement (October 2020), applying the *Georgia-Pacific* factors. The patented method is a payment-authorization mechanism, not the groceries sold; consistent with the entire-market-value rule and the apportionment requirement, Wolverine does not seek a royalty on Albertsons' total sales. The base below is confined to transactions actually settled through the accused barcode-payment method, the smallest salable unit that practices the claim. The factors most relevant here are the value of fast, contactless, card-fee-avoiding checkout the method delivers (factors 9–11), its role in driving app engagement, loyalty enrollment, and repeat visits (factor 6), and the portion of value attributable to the patented authorization step as distinct from the underlying merchandise and Albertsons' own app and store infrastructure (factor 13).

**Worked calculation — merits reasonable royalty**

The figures below are built from Albertsons' public filings and reputable industry data. Each is an estimate pending discovery of Albertsons' actual transaction records, and each carries a client/actuals input slot. Opposing counsel can reproduce every step from the cited public sources.

| # | Input / step | Value | Basis (source) |
|---|---|---|---|
| 1 | Albertsons net sales & other revenue, FY2024 | $80,390.9M | ACI FY2024 results / Form 10-K [ESTIMATE — SEC/ACI, pending discovery] |

2

| 2 | Avg. in-store grocery transaction | $45.70 | FMI / industry data, 2024 [ESTIMATE — industry, pending discovery] |
|---|---|---|---|
| 3 | Total annual customer transactions (1 ÷ 2) | ≈ 1.759 billion | Derived |
| 4 | Adoption: share settled via accused Albertsons Cash / DirectPay | 2% (illustrative) | [ESTIMATE — no public figure; pending discovery] |
| 5 | Accused transactions / year (3 × 4) | ≈ 35.18 million | Derived |
| 6 | Apportioned per-transaction royalty | $0.02 | Fraction of the ~$0.35/txn + % card-processing cost the method displaces, per '689 patent col. 5–6 |
| 7 | Annual royalty (5 × 6) | ≈ $704,000 | Derived |
| 8 | Damages period (Oct. 2020 – present) | ≈ 5 years | '689 patent; § 286 window |
| 9 | Merits royalty (central estimate) | ≈ $3.52 million | Derived (7 × 8) |

**Sensitivity (5-year cumulative).** Holding the period at five years and varying adoption and rate:

| Per-txn rate | 1% adoption | 2% adoption | 3% adoption |
|---|---|---|---|
| $0.01 | $0.88M | $1.76M | $2.64M |
| $0.02 | $1.76M | $3.52M | $5.28M |
| $0.05 | $4.40M | $8.79M | $13.19M |

3

**Cross-check — per-enrolled-user royalty.** Albertsons reported more than 45 million "for U" loyalty members as of Q4 FY2024. Assuming 5% have enrolled in the accused payment method ($\approx$ 2.25 million users [ESTIMATE — pending discovery]) and a per-user royalty of $0.50/year, the five-year figure is $\approx$ $5.63 million — corroborating the per-transaction model and placing the central merits range at roughly **$3.5–5.6 million**, with upper sensitivities approaching $8.8 million before any enhancement.

**Willfulness and enhancement.** From the date of service of the complaint forward, Albertsons has had notice of the '689 patent and its alleged infringement. Continued use exposes Albertsons to enhanced damages of up to treble under 35 U.S.C. § 284, materially increasing the exposure above the figures shown.

**Cost-of-defense reality.** Independent of the merits, the economics favor early resolution. Defending a patent case of this size through trial typically runs several million dollars in fees and costs alone [ESTIMATE — AIPLA Report of the Economic Survey; pending verification], before any judgment, enhancement, or fee award. The demand below sits at or below that defense cost while resolving the merits exposure in full.

**Settlement demand**

To resolve all claims, Wolverine demands a one-time, fully paid-up payment of:


**$149,000, but we will not honor this number after July 17, 2026.**


This figure is anchored to the worked reasonable-royalty calculation above, as a steep discount top the lower end of the converged $3.5–5.6 million central merits range, and well below both the upper sensitivity (~$8.8 million) and the enhanced-damages exposure. It is a compromise figure reflecting the ordinary discount for litigation risk and the time value of an early, certain resolution.

**License and release terms**

In exchange, Wolverine will grant Albertsons Companies, Inc. and its operating banners a worldwide, non-exclusive, fully paid-up license to the '689 patent covering the accused Albertsons Pay / Albertsons Cash / DirectPay functionality for the remaining life of the patent; a release of all claims for past infringement through the effective date; and a stipulation of dismissal with prejudice, each side to bear its own fees and costs. We will provide a draft agreement on request.

**Response deadline and step-up**

Please respond by **July 17, 2026**. If we have not reached agreement in principle by that date, this offer is withdrawn, Wolverine's settlement position will step up to reflect continued accrual of damages and litigation expense, and Wolverine will proceed with the litigation, including its claim for enhanced damages for willful infringement and its request for fees under 35 U.S.C. § 285. Nothing herein waives any right or position, all of which are expressly reserved.

4

We are prepared to discuss this by phone at your convenience.

Sincerely,

William P. Ramey, III

Ramey LLP

Counsel for Wolverine Barcode IP, LLC